**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AXON ENTERPRISE, INC., a Delaware corporation,

*Plaintiff-Appellant*,

v.

FEDERAL TRADE COMMISSION, a federal administrative agency; JOSEPH J. SIMONS; NOAH PHILLIPS; ROHIT CHOPRA; REBECCA SLAUGHTER; CHRISTINE WILSON, in their official capacities as Commissioners of the Federal Trade Commission,

*Defendants-Appellees.*

No. 20-15662

D.C. No. 2:20-cv-00014-DWL

OPINION

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted July 17, 2020
San Francisco, California

Filed January 28, 2021

Before:  Eugene E. Siler,[*] Kenneth K. Lee, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Lee;
Partial Concurrence and Partial Dissent by Judge Bumatay

## SUMMARY[**]

### Federal Trade Commission

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of an action filed by Axon Enterprises, Inc. arguing that the Federal Trade Commission ("FTC")'s administrative enforcement process violated Axon's constitutional rights.

The FTC investigated and filed an administrative complaint challenging Axon's acquisition of a competitor. The FTC demanded that Axon spin-off its newly acquired company and provide it with Axon's intellectual property. Axon responded by filing this lawsuit. Axon alleged that the FTC's administrative enforcement process violated its due process rights, and ran afoul of separation-of-powers principles.

The panel held that the district court did not have jurisdiction to hear Axon's constitutional challenges to the

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

FTC's structure.  Specifically, the panel affirmed the district court's dismissal because the Supreme Court's *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), trilogy of cases mandated that result.  The panel further held that Congress and the FTC Act impliedly barred jurisdiction in the district court and required parties to move forward first in the agency proceeding.  Because the FTC statutory scheme ultimately allowed Axon to present its constitutional challenges to a federal court of appeals after the administrative proceeding, Axon did not suffer any cognizable injury.  The panel joined every other circuit that considered a similar issue, and held that Congress impliedly stripped the district court of jurisdiction.

Judge Bumatay concurred in the judgment and dissented in part.  He would hold that Axon was entitled to bring its claims representing broad constitutional claims not requiring review of the merits on individual agency action before the district court, and the district court erred in dismissing them at the outset.  In contrast, Axon's claim against the FTC's adjudicatory structure contested the agency's antitrust determinations and must be brought before the FTC.

**COUNSEL**

Pamela B. Petersen (argued), Axon Enterprise Inc., Scottsdale, Arizona, for Plaintiff-Appellant.

Daniel Aguilar (argued), Mark B. Stern, Joshua M. Salzman, and Amanda L. Mundell, Appellate Staff; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

LEE, Circuit Judge:

Over the past century, Congress has established an array of quasi-independent executive agencies that enjoy partial insulation from presidential oversight and wield tremendous enforcement power. Instead of filing lawsuits in federal court, these agencies can commence administrative enforcement proceedings against companies and individuals, and make their cases before their own administrative law judges (ALJs). Not surprisingly, ALJs overwhelmingly rule for their own agencies.

Here, the Federal Trade Commission (FTC) investigated and filed an administrative complaint challenging Axon Enterprise, Inc.'s acquisition of a competitor. The FTC demanded that Axon spin-off its newly acquired company and provide it with Axon's own intellectual property. Axon responded by filing a lawsuit in federal district court, arguing that the FTC's administrative enforcement process violates Axon's due process rights and runs afoul of separation-of-powers principles.

The narrow question presented here is whether the district court has jurisdiction to hear Axon's constitutional challenge to the FTC's structure. The district court dismissed Axon's complaint, ruling that the FTC's statutory scheme requires Axon to raise its constitutional challenge first in the administrative proceeding.

We affirm the district court's dismissal because the Supreme Court's *Thunder Basin* trilogy of cases mandates that result. The structure of the FTC Act suggests that Congress impliedly barred jurisdiction in district court and required parties to move forward first in the agency

proceeding. And because the FTC statutory scheme ultimately allows Axon to present its constitutional challenges to a federal court of appeals after the administrative proceeding, Axon has not suffered any cognizable harm. We join every other circuit that has addressed a similar issue in ruling that Congress impliedly stripped the district court of jurisdiction.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Axon makes, among other things, body cameras for use by law enforcement. In May 2018, it acquired a competitor body camera company called Vievu LLC. About a month later, the FTC sent Axon a letter stating that the Vievu acquisition raised antitrust concerns. For about eighteen months, Axon cooperated with the FTC's investigation. In December 2019, the FTC demanded that Axon turn Vievu into a "clone" of Axon using Axon's intellectual property. If Axon refused this settlement demand, the FTC threatened to initiate an administrative proceeding to obtain this relief.

In response, Axon filed this action in the district court on January 3, 2020.[1] Axon made three substantive claims: (1) the FTC's administrative proceeding violates Axon's Fifth Amendment due process rights, (2) the FTC's structure violates Article II by providing improper insulation from the president, and (3) Axon's acquisition of Vievu did not violate antitrust law.

Axon argued that the FTC's administrative enforcement scheme violates its due process rights because the agency

---

[1] The FTC filed an administrative complaint challenging the Vievu acquisition later that same day.

effectively acts as the prosecutor, judge, and jury, and that it is entitled to a trial in district court.  Axon notes that the FTC has not lost an administrative proceeding trial in the past quarter-century.  It also maintains that the FTC's ALJs impermissibly enjoy dual-layer insulation from presidential control because only the FTC commissioners can remove them for cause and the commissioners, in turn, can be removed only for cause by the President.

Axon later filed a motion for preliminary injunction.  The FTC opposed the preliminary injunction motion, relying mainly on jurisdictional grounds.  The district court agreed with the FTC and dismissed Axon's complaint without prejudice due to a lack of subject matter jurisdiction.  It determined that Congress impliedly precluded jurisdiction over Axon's claims when it enacted the FTC administrative review scheme.

Axon timely filed its notice of appeal to this court.

## STANDARD OF REVIEW

We review de novo a district court's determination of subject matter jurisdiction.  *See Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016).

## DISCUSSION

The FTC Act does not expressly state that a party cannot sue in federal district court to challenge the agency's administrative enforcement process.  But that does not rule out that Congress may still have impliedly precluded district court jurisdiction when it enacted a statutory scheme of administrative review.  *See, e.g.*, *Bennett v. U.S. Sec. and Exch. Comm'n*, 844 F.3d 174, 181 (4th Cir. 2016); *Jarkesy*

*v. U.S. Sec. and Exch. Comm'* 803 F.3d 9, 15 (D.C. Cir. 2015).

Courts have fashioned a two-step inquiry to determine whether Congress impliedly precluded jurisdiction. First, a court asks "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Bennett*, 844 F.3d at 181 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). Second, a court considers "whether plaintiffs' 'claims are of the type Congress intended to be reviewed within this statutory structure.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212).

We conclude that, following this two-step analysis, Congress impliedly precluded district court jurisdiction over claims of the type brought by Axon when it enacted the FTC Act. We are guided and constrained by the so-called *Thunder Basin* factors set out by the Supreme Court in assessing this question.

## I. The *Thunder Basin / Free Enterprise / Elgin* trilogy for determining implied preclusion of jurisdiction.

The Supreme Court set out the modern standard for implied preclusion of district court jurisdiction in three cases: *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010), and *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012). Because we apply the so-called *Thunder Basin* factors here, a closer look at each case will assist our analysis.

### A. *Thunder Basin*

In *Thunder Basin*, the Supreme Court considered whether the Federal Mine Safety and Health Amendments

Act of 1977, 30 U.S.C. § 801 *et seq.*, prevented a district court from exercising jurisdiction over a pre-enforcement challenge to the statute. 510 U.S. at 202. Thunder Basin Coal Company objected to an order by the Mine Safety and Health Administration (MSHA) requiring the company to post two members of a miner's union, who were not employees of the company, as representatives during a healthy and safety inspection. *See id*. at 205. Thunder Basin made two arguments: (1) the designation of nonemployee representatives violated collective bargaining principles under the National Labor Relations Act, and (2) forcing the company to challenge MSHA's regulatory interpretations through the administrative review process would violate due process because it would force the company to choose between possible penalties for violating the act or irreparable harm from complying with the agency's order. *See id*. at 205–06.

The Supreme Court concluded that the Mine Act precluded district court jurisdiction. Under the first step of the analysis, the Court held that it could discern Congress' intent to preclude district court jurisdiction based on the Mine Act's "detailed structure for reviewing violations," subject to review by the federal court of appeals. *Id*. at 207–08. Then under the second step, the Court determined that the claims were of the type Congress intended to be reviewed within this scheme. First, it concluded that the company's claims fell within the agency's expertise because they essentially required an interpretation of the parties' rights and duties under the relevant statute and regulation. *Id*. at 214–15. Second, though the agency lacked the authority to decide constitutional issues, the court of appeals could address them after the parties concluded the administrative proceeding. *Id*. at 215. Third, the Court rejected the argument that due process required pre-enforcement action

because it found that Thunder Basin would not face any serious prehearing deprivation that could not be remedied on appeal.  *Id*. at 216–18.

The big takeaway from *Thunder Basin* is that an administrative review scheme can preclude district court jurisdiction, despite the possibility that the administrative process cannot address or remedy the alleged constitutional harm until a federal court of appeals reviews the case.

## B.  *Free Enterprise*

The second Supreme Court case, *Free Enterprise*, considered whether the structure of the Public Company Accounting Oversight Board violated Article II's vesting of executive power in the presidency.  561 U.S. at 483–84.  An accounting firm sued after the Board released a report critical of the firm's auditing procedures and began a formal investigation.  *Id*. at 487.  The firm sought a declaratory judgment that the Board's structure violated the Appointment Clause and an injunction preventing the Board from exercising its powers.  *Id*.  Notably, the firm did not challenge the agency's final order or rule, but rather the Board's critical report.

The Supreme Court determined that the statutory scheme did not preclude jurisdiction.  *Id.* at 489.  For the second step of the analysis—whether the claims are of the type meant to be reviewed within the statutory scheme—the Court identified three factors from *Thunder Basin* to consider: (1) whether a party can obtain "meaningful judicial review" within the statutory scheme, (2) whether the suit is "wholly collateral to a statute's review provisions," and (3) whether

the claims are "outside the agency's expertise." *Id*. (internal quotation marks omitted).[2]

In ruling that statutory scheme did not strip jurisdiction, the Court held that the firm could not obtain meaningful review of its claim under the statutory scheme because it did not challenge a final agency order or rule. Though the Board acted under SEC oversight, the SEC can review only Board rules and sanctions. *Id*. at 489. This meant that "not every Board action is encapsulated in a final Commission order or rule." *Id*. at 490. The accounting firm was challenging the Board's critical report, which cannot be reviewed by the agency or the appellate court. So the only way the firm could raise its constitutional claim under the statutory scheme was to either challenge a "random" Board rule or willingly incur a Board sanction by violating a discovery order. *See id*. The Court thus held that the statutory scheme did not provide a meaningful judicial review. *Id.* The Court also concluded that the constitutional claims were outside the SEC's competence and expertise because they were "standard questions of administrative law" rather than "technical considerations of agency policy." *Id*. at 491 (alteration omitted).

*Free Enterprise* makes clear that if a party cannot seek judicial review for its grievances under the normal procedures of the statutory scheme, it does not have meaningful judicial review.

---

[2] Because the Court viewed these factors as originating from *Thunder Basin*, courts have sometimes called them the *Thunder Basin* factors.

### C. *Elgin*

Finally, the third Supreme Court case, *Elgin*, addressed whether the Civil Service Reform Act of 1978 (CSRA) "provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional." 567 U.S. at 5. The petitioners argued that the federal government's Selective Service registration requirement for males violated the Equal Protection Clause. *Id*. at 6–7.

The Supreme Court found that Congress precluded district court jurisdiction over such claims. The majority opinion first concluded that there was a fairly discernible congressional intent to preclude jurisdiction because of the CSRA's detailed structure. *See id.* at 10–13.

The Court also found that the claims were of the type Congress intended to preclude. For the first *Thunder Basin* factor, the Court found that there was meaningful review even though the agency lacked the authority to address the constitutional issues because the statute ultimately "provides review in the Federal Circuit, an Article III court fully competent to adjudicate petitioners' claims . . . ." *Id*. at 17. For the second factor, the Court held that the claims were not wholly collateral to the CSRA scheme because the claims were "the vehicle by which they seek to reverse" the agency actions taken against them. *Id*. at 21–22. Finally, for the third factor, the Court explained that the agency could bring its expertise to bear on "threshold" questions within the agency's expertise; for example, one petitioner's claim rested on an allegation of constructive discharge, which the agency could resolve in a manner that could avoid the need to reach the constitutional claim. *Id*. at 22–23.

*Elgin* thus clarified that a claim is not "wholly collateral" to a statutory review scheme if it is the "vehicle by which" a party seeks to prevail at the agency. *Elgin* also shows that sometimes an agency's expertise can affect constitutional claims if there are preliminary questions apart from the merits questions at issue.

With these three cases in mind, we now turn to the implied preclusion analysis.

## II. Step one: The FTC Act evinces a fairly discernible intent to preclude district court jurisdiction.

Axon appears to concede that the FTC Act impliedly precludes jurisdiction for at least some claims. The FTC Act includes a detailed overview of how the FTC can issue complaints and carry out administrative proceedings. 15 U.S.C. § 45. This provision is almost identical to the statutory review provision in the SEC Act, which other circuits have held shows a fairly discernible intent to strip district court jurisdiction. *See*, *e.g.*, *Hill v. SEC*, 825 F.3d 1236, 1241 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276, 281 (2d Cir. 2016). We thus hold that the FTC Act reflects a fairly discernible intent to preclude district court jurisdiction.

## III.    Step two: The *Thunder Basin* factors suggest that the claims are of the type to be reviewed within the statutory scheme.

We now turn to whether Axon's claims are of the type meant to be reviewed within the FTC Act's statutory scheme. Axon argues that it has three claims for the district court to decide: (1) the clearance process used to determine whether the FTC or DOJ will review a merger violates due process, (2) the fact that the FTC combines investigatory,

prosecutorial, adjudicative, and appellate functions within a single agency violates due process, and (3) the dual-layer of protection given to FTC ALJs violates the Appointments Clause of Article II of the Constitution.[3]

Under the *Thunder Basin* factors, we must consider: (1) whether the plaintiff can obtain meaningful judicial review in the statutory scheme, (2) whether the claim is "wholly collateral" to the statutory scheme, and (3) whether the claim is outside the agency's expertise. *See Elgin*, 567 U.S. at 15 (citing *Thunder Basin*, 510 U.S. at 215). The D.C. Circuit has explained that these three factors do not "form three distinct inputs into a strict mathematical formula," but are rather "general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Jarkesy*, 803 F.3d at 17. Several courts have also concluded that "the first factor—meaningful judicial review—is 'the most critical thread in the case law.'" *See, e.g.*, *Hill*, 825 F.3d at 1245 (quoting *Bebo v. SEC*, 799 F.3d 765, 774 (7th Cir. 2015)).

In applying these *Thunder Basin* factors, we conclude that Axon's claims are of the type meant to be reviewed within the statutory scheme.

### A. Axon will have meaningful judicial review of its claims.

Axon's argument on the first *Thunder Basin* factor boils down to a simple premise: eventual review by the federal

---

[3] These three claims do not line up with the three claims that Axon brought in its complaint. Rather, Axon agreed that the FTC should decide the merits of the antitrust dispute and that the clearance process claim falls within its due process claim.

appellate court is not meaningful judicial review. But Supreme Court precedent, as well as rulings from our sister circuits, rejects that premise.

First, Axon argues that the FTC Act does not provide meaningful judicial review because the administrative process itself "creates ongoing constitutional harm that simply cannot be remedied in an after-the-fact appeal." But the Supreme Court in *Thunder Basin* held that the "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals," even though the petitioner there similarly argued that the agency process itself would violate its constitutional rights. *See Thunder Basin*, 510 U.S. at 215; *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (rejecting petitioner's argument that "the expense and disruption of defending itself in protracted adjudicatory proceedings" warrants an exception to the agency review process).[4]

Other circuits have rejected this argument as well. As the Eleventh Circuit explained in *Hill v. SEC*, "[w]hether an injury has constitutional dimensions is not the linchpin in determining its capacity for meaningful judicial review."

---

[4] Axon seeks to distinguish *Standard Oil* on the basis that it did not deal with an allegedly unconstitutional proceeding. Other circuits have rejected this distinction, however. *See Jarkesy*, 803 F.3d at 26 ("If the injury inflicted on the party seeking review is the burden of going through an agency proceeding . . . then [*Standard Oil*] teaches that the party must patiently await the denouement of proceedings within the Article II Branch." (internal quotation marks omitted)); *Bennett*, 844 F.3d at 185 (rejecting the argument that "*Standard Oil* is inapposite because it did not involve a constitutional claim" because it "makes no material difference for assessing the meaningfulness of judicial review here, because *Thunder Basin* and *Elgin* establish that petitioners can obtain meaningful review of constitutional claims through a statutory scheme similar to the one here").

825 F.3d at 1246; *see also Bennett v. U.S. Sec. and Exch. Comm'n*, 844 F.3d 174, 184 n.10 (4th Cir. 2016) ("[F]ederal courts require litigants who unsuccessfully challenge the constitutionality of the initial tribunal—including the authority of the presiding decision maker—to endure the proceeding and await possible vindication on appeal."); *Tilton*, 824 F.3d at 285 (explaining that "post-proceeding relief, although imperfect, suffices to vindicate the litigant's constitutional claim" dealing with the legitimacy of the tribunal).

In other words, Axon has no right to avoid the administrative proceeding itself. If the proceeding might harm Axon, that harm can still be ultimately remedied by a federal court of appeals, even if it is not Axon's preferred remedy of avoiding the agency process altogether. *See Bennett*, 844 F.3d at 185 n.12 (rejecting the argument that a court could not provide "complete relief" to the Appointments Clause claim and explaining that the petitioner is not necessarily "entitled to her preferred remedy" given that "Congress may substitute remedies for illegal action"). Axon's argument also proves too much because then "[e]very person hoping to enjoin an ongoing administrative proceeding could make this argument," which would undermine the notion that it is "only in the exceptional cases . . . where courts allow plaintiffs to avoid the statutory review schemes prescribed by Congress." *Bebo*, 799 F.3d at 775.[5]

---

[5] It is telling that Axon appears disappointed that "the best Axon can hope for is a remand for a complete do-over." A "do-over," however, is exactly the type of relief the Supreme Court has ordered when it has found a constitutional violation of an agency process. *See Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (after finding an Appointments Clause

Axon also complains that it can obtain judicial review only if FTC prevails in the administrative proceeding and issues a cease and desist order.  15 U.S.C. § 45(c). But that is true for any statutory review scheme that allows only for review of final agency orders.  For example, the SEC review scheme allows judicial review only for "[a] person aggrieved by a final order of the Commission," 15 U.S.C. § 78y(a)(1), yet every other circuit to have addressed the SEC statutory scheme found that a party can obtain meaningful judicial review.  *See Bennett*, 844 F.3d at 186; *Hill*, 825 F.3d at 1246; *Tilton*, 824 F.3d at 286–87; *Jarkesy*, 803 F.3d at 20; *Bebo*, 799 F.3d at 774.  If we accepted Axon's argument, it would create a gaping loophole to the statutory scheme that Congress could not have intended.  As the Fifth Circuit explained, "Congress provides meaningful judicial review by authorizing review of challenges to a final agency order by a federal circuit court."  *Bank of La. v. FDIC*, 919 F.3d 916, 925 (5th Cir. 2019).

To be sure, sometimes the burden of an agency process may justify pre-enforcement relief.  But that is for exceptional circumstances not relating to typical agency review.  We agree with the Second Circuit's view in *Tilton*: "[T]he Supreme Court has concluded that post-proceeding judicial review would not be meaningful because the proceeding itself posed a risk of some additional and irremediable harm *beyond the burdens associated with the*

violation, concluding that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official"); *see also Free Enterprise*, 561 U.S. at 508–513 (rejecting the argument that the Appointments Clause violation rendered all of the Board's actions and authority in violation of the Constitution and instead severing the unconstitutional tenure provisions from the statute and concluding that "petitioners are not entitled to broad injunctive relief against the Board's continued operations").

*dispute resolution process*." 824 F.3d at 286 (emphasis added); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (finding that petitioners' claims were not precluded by a statutory review provision because petitioners would have had to "voluntarily surrender themselves for deportation" to obtain review); *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976) (explaining that exhaustion was not required because petitioner faced harm arising from "his physical condition and dependency upon the disability benefits," not the alleged deprivation of due process that was the basis for his claim).

Axon does not face such a dire risk requiring pre-enforcement relief. *See Tilton*, 824 F.3d at 286 (concluding that "appellants have identified no such additional, irremediable harm here" because "[t]he only prospective injury that they describe is being subjected to an unconstitutional adjudicative procedure") (internal quotation marks omitted)); *Jarkesy*, 803 F.3d at 21 (finding that the petitioner's claim was not like *McNary*). Thus, Axon's alleged constitutional harm does not prevent the FTC Act's statutory review scheme from providing meaningful judicial review.

Second, Axon argues that the agency review process cannot provide meaningful review because it cannot address Axon's constitutional claims. Axon's argument makes sense from a policy perspective: it seems odd to force a party to raise constitutional challenges before an agency that cannot decide them. But the Supreme Court has rejected that argument. In *Elgin*, the Court held that, even if the agency cannot decide constitutional claims, a meaningful judicial review exists as long as the party ultimately can appeal to "an Article III court fully competent to adjudicate petitioners' claims." 567 U.S. at 17; *see also id.* (explaining

that in *Thunder Basin* "we held that Congress' intent to preclude district court jurisdiction was fairly discernible in the statutory scheme '[e]ven if' the administrative body could not decide the constitutionality of a federal law" when "[t]hat issue . . . could be 'meaningfully addressed in the Court of Appeals' that Congress had authorized to conduct judicial review"); *Bank of Louisiana*, 919 F.3d at 926 ("Indeed, there can be meaningful review in the circuit court even if the agency itself lacks authority to decide the constitutional question presented."); *Jarkesy*, 803 F.3d at 19 ("Because Jarkesy's constitutional claims, including his non-delegation challenge to Dodd–Frank, can eventually reach 'an Article III court fully competent to adjudicate' them, it is of no dispositive significance whether the Commission has the authority to rule on them in the first instance during the agency proceedings.").    Here, Axon can present its constitutional claims to this court after the conclusion of the FTC enforcement proceedings.    That is enough under Supreme Court precedent.

Third, the Supreme Court in *Elgin* rejected the premise of Axon's argument that there cannot be meaningful review if the agency process does not create an appropriate record for the federal court of appeals.  It held that the court of appeals can take judicial notice of relevant facts or remand to the agency to make factual findings.  *Elgin*, 567 U.S. at 19.  Here, 15 U.S.C. § 45(c) allows the court of appeals to "order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper."**[6]**

---

**[6]** Axon's reliance on *Fashion Originators Guild of America v. FTC*, 114 F.2d 80 (2nd Cir. 1940) is inapt.  That case dealt with a situation in

Finally, Axon argues—and the dissent agrees—that its claims resemble those from *Free Enterprise*. Under Axon's and the dissent's reading of *Free Enterprise*, challenges to an "agency's structure, procedures, or existence . . . are not precluded from district court jurisdiction." Dissent at 37–38. As the dissent cogently points out, it makes little sense to force a party to undergo a burdensome administrative proceeding to raise a constitutional challenge against the agency's structure before it can seek review from the court of appeals. And if we were writing on a clean slate, we would agree with the dissent.[7] *Cf. Ortega v. United States*, 861 F.2d 600, 603 & n. 4 (9th Cir.1988) ("This case is squarely controlled by the Supreme Court's recent decision . . . . [We] agree[ ] with the dissent that [appellant] deserves better treatment from our Government. Unfortunately, legal precedent deprives us of discretion to do equity.").

But the Supreme Court in *Free Enterprise* did not carve out a broad exception for challenges to an agency's structure, procedure, or existence. Rather, the Court justified district court jurisdiction on the narrow ground that the challenged action—the Board's critical report of the auditing firm—did not amount to a final order that could be appealed to a court

---

which the petitioner asked the court to review whether it was proper for FTC to actively exclude evidence that it deemed irrelevant. *See id.* at 82–83. That does not affect whether a court can remand for further factfinding as it pertains to Axon's constitutional claims.

[7] The dissent cites *Mace v. Skinner*, 34 F.3d 954 (9th Cir. 1994), and *Latif v. Holder*, 686 F.3d 1122 (9th Cir. 2012), but neither mandates district court jurisdiction here. *Mace* did not cite or apply *Thunder Basin*. And *Latif* did not consider the *Thunder Basin* factors under the second step of the implied preclusion analysis because the court ruled under the first step that Congress' intent to preclude jurisdiction was not "fairly discernable from the statutory scheme" at issue. 686 F.3d at 1129.

under the statutory scheme. *Free Enterprise*, 561 U.S. at 490-91 ("We do not see how petitioners could meaningfully pursue their constitutional claims" because the statute "provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule"). In other words, "an uncomplimentary inspection report is not subject to judicial review" under the statute. *Id.* at 490. So the auditing firm had no way to obtain judicial review, other than selecting a "random" Board Rule to challenge or "incur a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony." *Id.* The Court held that neither option offered access to a meaningful judicial review. *Id.* at 490–91. In other words, *Free Enterprise* does not appear to address a scenario where there is eventual judicial review, but rather speaks only to a situation of no guaranteed judicial review.

In Axon's case, though, it does not have to intentionally violate a "random" rule or incur sanctions by violating discovery orders to obtain judicial review of its claims. Under the statute, Axon has the right to seek judicial review from this court once the enforcement proceeding ends. It may not be an efficient mechanism to seek judicial review, but this court will eventually hear Axon's claims as long as it continues to oppose the FTC's actions. And any adverse order issued by the FTC would be stayed until Axon has had a chance to seek judicial review. *See* 15 U.S.C. § 45(g)(1)–(2).[8] Under Supreme Court precedent, that amounts to

---

[8] The dissent notes that Axon may not have an opportunity to have a court review the structure of the FTC if the FTC drops its investigation or Axon prevails on the merits during the administrative proceeding. But under either scenario, Axon has prevailed over FTC, and that ends the dispute. Put another way, Axon is not entitled to a judicial ruling on its

meaningful judicial review.  *See Thunder Basin*, 510 U.S. at 215 ("constitutional claims here can be meaningfully addressed in the Court of Appeals," despite petitioner's argument that the agency process itself would violate its constitutional rights); *Standard Oil Co. of Cal.*, 449 U.S. at 244.  Perhaps the Supreme Court in the near future will clarify and extend the holding of *Free Enterprise* to include any constitutional challenge to any agency's structure, procedure, or existence.  But based on our best reading of *Free Enterprise*, the Court has not done so yet.  Thus, *Free Enterprise* does not control here.  In sum, because "[t]he statutory scheme at issue in this case authorizes review of final [agency] orders in a federal circuit court," the FTC Act provides Axon meaningful judicial review under the first *Thunder Basin* factor.  *Bank of Louisiana*, 919 F.3d at 926.[9]

---

constitutional claim challenging the administrative proceeding if it has prevailed on the merits.

[9] Though Axon repeatedly points to cases involving a court asserting jurisdiction over pattern and practice claims, those cases are inapt.  None of those cases even mention the possibility that Congress can impliedly preclude district court jurisdiction, so they are not relevant.  *See generally McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991); *Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012).  Moreover, many of these cases fit within the implied preclusion framework because they consider whether the parties could have obtained meaningful review or whether the claims at issue were collateral to the review scheme.  *See McNary*, 498 U.S. at 496 (finding jurisdiction in part because, "if not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review of their application denials or of their objections to INS procedures notwithstanding the review provisions"); *VCS*, 678 F.3d at 1034–35 (relying on the fact that the claim at issue could not have been raised under the statutory scheme); *City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 874 (9th Cir. 2009) (asking "whether the claim . . . is

**B. Axon's constitutional claims are arguably "wholly collateral" to the enforcement proceeding.**

Courts have offered two competing ways to consider the second *Thunder Basin* factor of whether a claim is "wholly collateral" to the statutory review scheme.

Some district courts have held that a claim is wholly collateral to the statutory enforcement scheme if it is not *substantively* intertwined with the merits dispute in the agency proceeding. *See, e.g.*, *Hill v. SEC*, 114 F. Supp. 3d 1297 (N.D. Ga. 2015). Because Axon's constitutional challenges can be substantively separated from the underlying antitrust claim before the FTC, Axon argues that they are wholly collateral to the merits claim.

In contrast, several of our sister circuits—the D.C. Circuit, Second Circuit, and the Fourth Circuit—have applied this factor in the *procedural* sense: "a claim is not wholly collateral if it has been raised in response to, and so is procedurally intertwined with, an administrative proceeding—regardless of the claim's substantive connection to the initial merits dispute in the proceeding." *Tilton*, 824 F.3d at 287; *see also* *Bennett*, 844 F.3d at 187; *Jarkesy*, 803 F.3d at 22–25.[10]  In other words, if the claim is the procedural vehicle that the party is using to reverse the

---

collateral to an alien's substantive eligibility" and "stress[ing] the importance of meaningful judicial review of agency action.").

[10] The Fifth, Seventh, and Eleventh Circuits have not definitively addressed this issue. *See Bank of Louisiana*, 919 F.3d at 928; *Hill*, 825 F.3d at 1251–52; *Bebo*, 799 F.3d at 773–74.

agency action, it is not "wholly collateral" to the review scheme.

We agree that "the second reading is more faithful to the more recent Supreme Court precedent . . . ." *Bennett*, 844 F.3d at 187. *Elgin* found that a petitioner's constitutional claims were not wholly collateral when those claims were "the vehicle by which they seek to reverse the removal decisions" and to obtain relief. 567 U.S. at 22. Neither *Thunder Basin* nor *Free Enterprise* shed any light on whether "wholly collateral" should be construed procedurally or substantively. *See Free Enterprise*, 561 U.S. at 490–91 (not addressing the nature of "wholly collateral"); *Thunder Basin*, 510 U.S. at 212–13 (same).

While it is a close call, we find that the second *Thunder Basin* factor also supports preclusion of jurisdiction. Axon's complaint seeks to avoid the FTC process and the agency's settlement demands. Indeed, Axon's requested relief includes an injunction to prevent the FTC from pursuing its administrative enforcement action. The claims are therefore the "vehicle by which" Axon seeks to prevail at the agency level and are not wholly collateral to the review scheme.

## C. The FTC lacks agency expertise to resolve the constitutional claims.

The third *Thunder Basin* factor—whether the claims are outside the agency's expertise—weighs against jurisdiction-stripping.

Like the second factor, this third factor is cloaked in ambiguity. The Supreme Court in *Free Enterprise* took a straightforward approach: when an issue does not involve "technical considerations of [agency] policy" and instead involves "standard questions of administrative law, 561 U.S.

at 491 (internal quotation marks omitted), the issue lies outside the agency's expertise.  On the other hand, the Court several years later in *Elgin* arguably appeared to take a more expansive view of agency expertise, stating that there may be "threshold questions that may accompany a constitutional claim and to which the [agency] can apply its expertise" or "preliminary questions unique to the employment context [that] may obviate the need to address the constitutional challenge."  567 U.S. at 22–23.  Some circuits have read *Elgin* as suggesting that if an agency can moot the constitutional claims by resolving the merits issues before the agency, then the agency can bring its expertise to bear. *See, e.g.*, *Bank of Louisiana*, 919 F.3d at 929 (citing *Jarkesy*, 803 F.3d at 29).

We, however, disagree with the expansive reading of *Elgin*.  Such an approach is hard to reconcile with *Free Enterprise* unless we assume that *Elgin* somehow overruled *Free Enterprise* sub silentio. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18, 120 S. Ct. 1084, 1096, 146 L. Ed. 2d 1 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*"); *see also United States v. Obaid*, 971 F.3d 1095, 1102 (9th Cir. 2020) (citing *Shalala*, 529 U.S. at 18) ("We should not assume that the Supreme Court has implicitly overruled its precedent.").  Indeed, such an interpretation renders this third factor virtually meaningless because any challenge to an administrative process can be mooted if a party prevails on the substantive merits.

A narrower reading of *Elgin* reconciles it with *Free Enterprise*.  The constitutional challenges in *Elgin* required the determination of certain "*threshold*" questions that were directly within the agency's expertise.  For example, one petitioner's claim relied on the preliminary issue of whether

he was subject to a constructive discharge. *See Elgin*, 567 U.S at 23. In other words, *Elgin* stands for the unremarkable proposition that an agency's expertise can sometimes help decide an issue and thus obviate the need to resolve a constitutional claim. It does not establish a broad rule that an agency can always moot a claim by simply ruling for the party.

Here, there are no threshold questions that need to be addressed before reviewing Axon's constitutional claims. The due process and Appointments Clause claims do not turn on the antitrust merits of the case, so there is little room for the FTC to bring its expertise to bear. Rather, Axon's claims are more like the "standard questions of administrative law" that the *Free Enterprise* Court addressed.

Thus, the third factor weighs against preclusion.

\*     \*     \*

The *Thunder Basin* factors point in different directions here. Axon will have meaningful judicial review of its claims from within the statutory review scheme, which points to jurisdiction preclusion. The "wholly collateral" factor also likely favors preclusion, though that is far from clear. On the other hand, the agency expertise factor weighs against preclusion.

We agree with the other circuits, however, that under Supreme Court precedent the presence of meaningful judicial review is enough to find that Congress precluded district court jurisdiction over the type of claims that Axon brings. *See Bennett*, 844 F.3d at 183 n.7; *Bebo*, 799 F.3d at 774.

This is not to minimize Axon's serious concerns about how the FTC operates. For one, Axon raises substantial questions about whether the FTC's dual-layered for-cause protection for ALJs violates the President's removal powers under Article II. *See*, *e.g.*, *Free Enterprise*, 561 U.S. at 484 (ruling that dual for-cause limitations of Board members violates separation-of-powers); *Lucia v. SEC*, 138 S. Ct. 2044 (2018) (holding that SEC ALJs are "Officers" subject to the Appointments Clause); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020) (finding that the removal restrictions on the director of the CFPB violated Article II of the Constitution).

This case implicates one of the inherent tensions in the modern administrative state: Congress wanted to insulate ALJs from political interference, but ALJs wield tremendous power and still remain a part of the executive branch—even if Congress bestowed them with the title "judge"—and they should thus theoretically remain accountable to the President and the people. As the Supreme Court cautioned in *Free Enterprise*, the "growth of the Executive Branch, which now wields vast power and touches almost every aspect of daily life, heightens the concern that it may slip from the Executive's control, and thus from that of the people." 561 U.S. at 499. *See also, e.g.*, Linda D. Jellum, *"You're Fired!" Why the Alj Multi-Track Dual Removal Provisions Violate the Constitution and Possible Fixes*, 26 Geo. Mason L. Rev. 705, 743 (2019) (arguing that, in light of *Free Enterprise*, ALJs' dual-layers of protection violate the Constitution).

Further, Axon raises legitimate questions about whether the FTC has stacked the deck in its favor in its administrative proceedings. Axon claims—and FTC does not appear to dispute—that FTC has not lost a single case in the past

quarter-century. Even the 1972 Miami Dolphins would envy that type of record. Indeed, a former FTC commissioner acknowledged that the FTC adjudication process might unfairly favor the FTC given the agency's stunning win rate. Axon essentially argues that the FTC administrative proceeding amounts to a legal version of the Thunderdome in which the FTC has rigged the rules to emerge as the victor every time. But we cannot move beyond the *Thunder Basin* factors, which mandate our conclusion that Axon cannot bring a claim in district court. Axon can have its day in court—but only after it first completes the FTC administrative proceeding.

## IV. Axon's Clearance Process Claim

Finally, we address separately Axon's novel and superficially appealing argument that it lacks a meaningful judicial review of the government's "clearance process" claim.

Before deciding whether to move forward with an enforcement action, the FTC and the U.S. Department of Justice confer and decide which agency will bring the action, according to Axon. This alleged "black box" decision process has a significant impact on Axon and other targets of investigation: They may avail themselves of the procedural protections offered at a trial in district court (if the Department of Justice files a complaint), or they may be shunted to an administrative proceeding (if the FTC pursues the matter). Axon argues that it has no meaningful judicial review of this "clearance process" decision under the FTC statutory scheme, and thus should be able to raise it in district court.

But a closer look at this claim shows that it is really not about pre-investigation or pre-enforcement decisions, but

rather about the procedures the FTC will use. Axon takes issue with the fact that, when the FTC takes the case, companies are deprived "of the substantive or procedural protections enjoyed by litigants in federal district court." In other words, the clearance process falls within Axon's due process claim because it is arguing that it will face an unfair proceeding before the FTC. Indeed, Axon admitted as much.

But Axon will eventually have meaningful judicial review of its due process claim because it can raise it before a federal court of appeals after the administrative proceeding. If the court of appeals rules that the FTC administrative proceeding violates Axon's due process rights, it will presumably be then entitled to a trial in district court. On the other hand, if the FTC proceeding does not run afoul of due process, then Axon's complaint is ultimately that it prefers the Department of Justice over the FTC to lead the enforcement action. But the executive branch enjoys latitude in deciding what type of enforcement action to pursue and which agency will lead it. *Cf. Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (agency's decision not to pursue enforcement is unreviewable under the APA); *Standard Oil*, 449 U.S. at 242-45 (1980) (agency's decision to enforce is unreviewable). Absent any due process concerns, the target of an enforcement action cannot dictate the choices of the executive branch.

And under the *Thunder Basin* factors, Axon's clearance process claim—which is a due process claim—falls within the statutory review scheme. First, Axon has an opportunity for judicial review at the end of the process. *See supra* pp. 11, 13–21. Even though Axon asserts that the harm from the clearance process occurred before the enforcement action began, what matters is that Axon is currently in an administrative proceeding that ultimately leads to judicial

review.[11]        Second, Axon's challenge to the FTC's adjudicative procedures is not "wholly collateral" to the statutory scheme because it is the "vehicle by which" it seeks to succeed at the agency proceeding.  Finally, there is a stronger argument that the agency expertise factor warrants preclusion of the clearance process claim than for Axon's other claims.  The FTC might have valuable insight into how the clearance process works and demonstrate that the process does in fact comport with due process, which makes such questions more like the "threshold" issues addressed in *Elgin* than allowing the agency to avoid constitutional issues be deciding the case on the substantive merits.

Thus, we find that Axon's clearance process claim, just like its other claims, is of the type Congress intended to be reviewed under the FTC Act's statutory review scheme.

## CONCLUSION

We hold that Supreme Court precedent compels the preclusion of district court jurisdiction over Axon's claims. The FTC Act reflects a fairly discernible intent to preclude district court jurisdiction, and Axon can ultimately obtain meaningful judicial review of its claims before this court once the FTC administrative proceeding concludes.  We **AFFIRM** the district court's dismissal for lack of subject matter jurisdiction.

---

[11] Had Axon brought its clearance process claim early in the investigation, before the enforcement proceeding began, though, Axon might have had a stronger case for district court jurisdiction, but that issue is not properly before us.

BUMATAY, Circuit Judge, concurring in the judgment in part and dissenting in part:

Axon Enterprise, Inc., a major manufacturer of law-enforcement equipment, challenges the very existence of the Federal Trade Commission—an independent agency created by Congress—as unconstitutional.  First, Axon alleges that the "clearance process" used by the FTC and the Department of Justice to divide up antitrust investigations violates due process and equal protection guarantees.  Second, the company claims that the double layer of termination protection for the FTC's administrative law judges infringes on the president's Article II authority.  Finally, it challenges the constitutionality of the FTC's administrative structure, which vests it with investigative, prosecutorial, and adjudicative powers.

At first blush, this case appears to be a weighty constitutional one.  Indeed, the advent of independent, administrative agencies has called on courts to test the bounds of the Constitution's defined structural limitations.  But those issues are not the subject of this appeal.  The district court dismissed the case for lack of jurisdiction, ruling that Axon must first raise its arguments before the FTC.  So the narrow, but equally important, question before the court is whether the district court has jurisdiction to consider Axon's broad constitutional claims in the first instance.

Following Supreme Court precedent and according due respect to separation-of-powers principles, I believe the clear answer to that question—at least for some of Axon's claims—is yes.  The majority holds otherwise.  Although thoughtfully considering the question, my friends in the majority unfortunately rule that Axon is precluded from its day in court and instead must bring its claims to the FTC—

the very agency it seeks to have declared unconstitutional. To get there, the majority misapplies Court precedent and ignores the injuries Axon is trying to vindicate. What's worse, by funneling the challenge to the FTC back to the FTC, Axon may forever be foreclosed from obtaining meaningful judicial review of its claims. For these reasons, I respectfully dissent.

## I.

Congress established the FTC over 100 years ago when President Woodrow Wilson signed the Federal Trade Commission Act into law. 38 Stat. 717 (1914). The FTC is tasked with preventing the use of "unfair methods of competition" and "unfair or deceptive acts or practices" in commerce. 15 U.S.C. § 45(a)(2). The Act authorizes administrative proceedings within the agency to determine if a party is engaged in these prohibited methods, acts, or practices. *Id.* § 45(b). It also empowers the FTC to issue a "cease and desist" order against an antitrust violator. *Id*. After such an order, review of the administrative adjudication is only permitted in the "appropriate court of appeals of the United States." *Id*. § 45(b), (d), (g).

Although the Act is silent on this question, we must decide what role district courts play when a party—like Axon—asserts broad constitutional claims against the FTC itself. To start, it is a well-settled presumption that Congress intended subject matter jurisdiction in the district courts for all claims arising under federal law. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 350–51 (1984); 28 U.S.C. § 1331. To be sure, there is also a narrow exception to that presumption: sometimes Congress delegates jurisdiction exclusively to an administrative agency to consider a claim in the first instance. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). Such action effectively strips

district courts of original jurisdiction over the claim.  While this jurisdiction stripping is usually explicit, it may also come implicitly.  *See id.*  In all cases, we should favor a "narrower construction" of jurisdiction stripping over a "broader one." *ANA Int'l Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004).

The Supreme Court has established a two-step framework for discerning whether Congress impliedly precluded district court jurisdiction over a party's claim. *See Thunder Basin*, 510 U.S. 200.  Under that precedent, district courts are impliedly precluded from exercising jurisdiction when (1) Congress's intent to make an administrative process exclusive is "fairly discernible" from the statutory scheme, and (2) the claims at issue "are of the type Congress intended to be reviewed within th[at] statutory structure." *Id.* at 207, 212 (simplified).  At the second step, we consider what's known as the *Thunder Basin* factors: (1) whether the claims can be afforded "meaningful judicial review" without district court jurisdiction; (2) whether the claim is "wholly collateral" to the agency's review provisions; and (3) whether the claims are "outside the agency's expertise." *Id.* at 212–13.

In *Thunder Basin*, the Court considered whether a statutory scheme of administrative review followed by judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff's statutory and constitutional claims. *Id*. at 206.  The Court noted that the plaintiff's claims could be "meaningfully addressed in the Court of Appeals" and that the case therefore did "not present the 'serious constitutional question' that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim." *Id*. at 215 n.20.  Notably, the Court explained that an agency's statutory framework

will generally not serve as a bar to district court jurisdiction over a constitutional challenge to the agency's procedures, when Congress only allows appellate review of individual determinations. *Id*. at 213 (describing *McNary v. Haitian Refugee Center, Inc*., 498 U. S. 479 (1991)).

The Court demonstrated how to apply the *Thunder Basin* factors in two subsequent cases: *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and *Elgin v. Department of Treasury*, 567 U.S. 1 (2012).

In *Free Enterprise Fund*, the Court found concurrent district court jurisdiction for a claim challenging the constitutionality of an independent board's existence. 561 U.S. at 490. In that case, a plaintiff was able to bring its constitutional claim in district court because the board's statutory scheme only guaranteed judicial review of a board sanction or rule. *Id*. Such cramped judicial review wasn't enough to divest the district court's jurisdiction in the Court's view because "not every Board action is encapsulated in" an appealable order. *Id*.

Two years later, in *Elgin*, the Court determined another independent board had exclusive jurisdiction to review claims dealing with the constitutionality of—not the board itself—but of federal statutes bearing on its merits determinations. 567 U.S. at 5–6. The Court concluded the board's administrative procedures provided ample review since any merits determination was reviewed by the Federal Circuit and, thus, the constitutional issue would ultimately be adjudicated by an Article III court. *Id*. at 17.

Our circuit has also considered the dividing line between exclusive agency jurisdiction and concurrent district court jurisdiction. In a case challenging an executive agency's

authority, we have held that "any examination of the constitutionality of [an agency's power]," rather than the merits of an individual action, "should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'" *Mace v. Skinner*, 34 F.3d 854, 859 (9th Cir. 1994). We later concluded that plaintiffs raising "broad constitutional claims that do not require review of the merits of their individual [agency] grievances" are not precluded from bringing their challenge in the district court. *Latif v. Holder*, 686 F.3d 1122, 1129 (9th Cir. 2012) (applying *Elgin* to a Department of Homeland Security challenge); *see also Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006) (allowing for district court "residual jurisdiction" when a constitutional claim for damages is not "inextricably intertwined" with an agency order).[1]

While jurisdictional questions are often complex, the lesson of these cases is straightforward: Absent legislative language to the contrary, challenges to an agency's *structure, procedures,* or *existence*, rather than to an agency's adjudication of the merits on an individual case, may be heard by a district court. On the other hand, complaints regarding the agency's application of substantive law to the merits of an individual case are exclusively relegated to the agency's administrative process.

---

[1] The majority wrongly discards these precedents. First, I disagree that *Mace* is not controlling in light of *Thunder Basin*. Maj. Op. at 19 n.7. The majority posits no irreconcilability between the cases and so *Mace* remains binding law. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (holding that precedent of this court remains binding unless it is "clearly irreconcilable" with intervening Court decisions). Second, while it is contestable whether *Latif* was a *Thunder Basin* step one or two case, I fail to see why its guidance should be ignored here.

Accordingly, our duty should be to scrutinize each claim to determine whether it's merely an attack on a merits determination or something more existential to the agency.

The demarcation of jurisdiction along these lines most respects the separation of powers. Congress created the agency adjudicatory process precisely to apply agency expertise to the merits of individual claims. Having district court proceedings parallel to an agency's administrative proceeding amounts to a collateral attack on agency decision-making and would undermine its congressionally mandated role. *See Elgin*, 567 U.S. at 14. Thus, preserving exclusive agency jurisdiction over individualized claims furthers Congress's intent. But to the extent the claims target the agency's existence, structure, or procedures under the Constitution, rather than its merits decisions, the district court remains an appropriate forum for such action. After all, pronouncing the constitutionality of a government function is precisely the business of Article III courts.

## II.

Applying the foregoing principles, Axon was entitled to bring some of its claims before the district court. The *Thunder Basin* factors demonstrate that Axon's clearance process and ALJ challenges represent "broad constitutional claims" not requiring review of the "merits of individual" agency actions. *Latif*, 686 F.3d at 1129. The district court was thus wrong to dismiss them at the outset. In contrast, Axon's claim against the FTC's adjudicatory structure, at bottom, contests the agency's antitrust determinations and must be brought before the FTC.

## A. Axon's Due Process and Equal Protection Challenge to the Clearance Process

Axon's first constitutional challenge targets the clearance process used by the FTC and the DOJ to divide their overlapping jurisdictions to review mergers and enforce antitrust laws. According to Axon, the clearance process decides if companies must answer to either the DOJ, with the prospect of a federal lawsuit in district court, or the FTC, with its administrative proceedings. Which agency has purview over an industry can mean a world of difference for the companies involved. For example, unlike federal court proceedings, the FTC's administrative hearings do not trigger the protections of the Federal Rules of Civil Procedure or Evidence. Furthermore, the FTC administrative hearings are presided over by an FTC Commissioner or ALJ rather than an impartial Article III judge. Despite the importance of the DOJ–FTC split, the clearance process is, according to Axon, a "black box" that isn't codified in any statute, rule, or regulation. Axon alleges that the clearance decision appears to be made "by a coin flip." Such an arbitrary process, Axon asserts, violates due process and equal protection under the Fifth Amendment.

Under the *Thunder Basin* factors, I would conclude that the district court has jurisdiction over this claim.[2]

### 1. Meaningful Review

Most fundamentally, the FTC Act provides insufficient meaningful review of Axon's clearance process claim. Not

---

[2] I limit my analysis to the second step of the *Thunder Basin* inquiry since Axon acknowledges that the FTC Act provides for exclusive agency jurisdiction over some claims.

all actions the FTC takes are subject to Article III scrutiny. Indeed, the Act only provides for court of appeals review of an FTC "cease and desist" order.    15 U.S.C. § 45(c). Accordingly, without a cease-and-desist order, the FTC's actions are largely immune from judicial review.  Moreover, the Act limits available relief, allowing courts to grant only a "decree affirming, modifying, or setting aside [an FTC] order[.]"  *Id.*

Under this statutory scheme, Axon's claim might never make it to an Article III judge.  Axon challenges the very process by which cases arrive at the FTC's doorstep rather than the DOJ's.  In other words, as Axon sees it, the FTC and DOJ's joint decision to subject the company to the FTC's jurisdiction is the harm in and of itself.  *Cf. Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (holding that a person subject to an unconstitutional agency's power suffers from a "here-and-now" injury). Under that theory of injury, Axon may not be able to meaningfully pursue its constitutional claim.

The Supreme Court has already told us that judicial review is insufficient when a statutory scheme only permits appeal of limited agency actions because not every agency action is "encapsulated" in an appealable order.  *Free Enterprise Fund*, 561 U.S. at 490.  Here, the interagency clearance process is similarly not necessarily "encapsulated" in a cease-and-desist order.  The FTC, for instance, may decide to drop its investigation of Axon, or Axon may settle or prevail on the merits in the administrative proceedings.  In such circumstances, Axon will still have been injured by the clearance process but have no cease-and-desist order to

appeal its claim.**[3]** Thus, exclusive agency jurisdiction here means that Axon's constitutional claim may never see the light of day.

Without a guaranteed vehicle for court review, Axon's only recourse is to intentionally lose before the FTC to receive any assurance of Article III adjudication of its clearance process claim. But, as the Court has said, conditioning judicial review on incursion of a harm is "tantamount to a complete denial of [judicial] review." *McNary*, 498 U.S. at 496. Indeed, parties shouldn't have to risk "severe punishment" "before testing the validity of [a] law." *Free Enterprise Fund*, 561 U.S. at 490 (simplified). As a result, I see no reason why Axon must "bet the farm" to get its day in court. *Id*.**[4]**

---

**[3]** The majority concludes that if Axon prevails on the antitrust merits, "that ends the dispute." Maj. Op. 20 n.8. I respectfully disagree. Winning on the antitrust merits does nothing to remedy Axon's *independent* injury of being subject to an unconstitutional structure or procedure. In *Free Enterprise Fund*, the agency's investigation of the plaintiff "produced no sanction;" nevertheless, the Court held that the firm was permitted to bring its constitutional challenge against the PCAOB in district court. 561 U.S. at 490. That is because "a separation-of-powers violation may create a 'here-and-now' injury" that is *independent* on the agency's merits determinations. *Id*. at 513; *see also Seila Law*, 140 S. Ct. at 2196 (recognizing the longstanding ability of "private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power").

**[4]** The majority recognizes that *Free Enterprise Fund* requires a "guaranteed" right of appeal to receive meaningful review. Maj. Op. 20. But the majority doesn't explain how Axon obtains such review if the FTC chooses not to place Axon in administrative proceedings or issue a cease-and-desist order as is required for judicial review under the FTC Act. In such cases, the majority must concede no judicial review is possible. I believe this violates the holding of *Free Enterprise Fund*.

Furthermore, adequate relief is a hallmark of meaningful review. *See Elgin*, 567 U.S. at 22. Here, even if Axon's claim reaches a court, the only relief afforded under the FTC Act is modification or setting aside of an FTC cease-and-desist order. 15 U.S.C. § 45(c). Such relief would not be adequate to address the alleged harms of an unconstitutional clearance process. If Axon raises a valid constitutional infringement, it is entitled to relief appropriate to remedy the violation, such as injunctive or declaratory relief. *See, e.g.*, *Free Enterprise Fund*, 561 U.S. at 513 (holding that the firm was entitled to declaratory relief to ensure that it would be subject only to "a constitutional agency"). And since appellate courts "have no jurisdiction to grant . . . remedies" other than those provided by Congress, *Latif*, 686 F.3d at 1128, Axon could not obtain necessary relief under the Act. The Act's complete lack of appropriate remedies for Axon cuts strongly against an implied congressional intent to displace district court jurisdiction. *See Americopters*, 441 F.3d at 735 (holding that district courts have "residual jurisdiction" to hear claims against an agency when the law does not grant the court of appeals jurisdiction over the appropriate form of relief).

## 2. Wholly Collateral

Axon's clearance claim is also "wholly collateral" to the administrative proceedings. A claim is not wholly collateral when it is the "vehicle" by which a party "seek[s] to reverse" an agency's decision. *Elgin*, 567 U.S. at 22. Here, Axon challenges the FTC's very jurisdiction to investigate any antitrust claims, not any particular FTC order or sanction. Indeed, as of the filing of Axon's complaint, the FTC had not established any antitrust violation by Axon or issued any

cease-and-desist order.[5]    But, as alleged by Axon, the clearance process itself injures its rights independent of any potential FTC sanctions for antitrust violations.  Thus, the clearance process claim doesn't serve as a "vehicle" to reverse an agency decision.  *Id*.  As such, Axon's claim most resembles *Free Enterprise Fund*'s challenge to an independent board's "existence" and is, therefore, "collateral" to any FTC merits adjudication.  561 U.S. at 490.

Moreover, there is no danger that Axon's claim is a collateral attack on an individual agency determination in disguise.  Axon may still be prosecuted for its putative violation of antitrust laws, regardless of any district court litigation casting doubt on the clearance process.  In other words, whether the clearance process complies with due process is wholly collateral to whether Axon committed an antitrust violation.

### 3.  Agency Expertise

Like in *Free Enterprise Fund*, Axon's challenge to the interagency clearance process is patently "outside the

---

[5] The majority suggests that Axon did not act quick enough.  The majority contends, if Axon filed its claims "early in the investigation," then it might have had a stronger case for district court jurisdiction.  Maj. Op. 29 n.11.  Such a malleable test for district court jurisdiction is seemingly unworkable.  *See Elgin*, 567 U.S. at 15 (rejecting jurisdictional rules that rely on "amorphous distinctions" and "hazy" lines).  After all, how "early" is early enough?  Is the day before the FTC files its enforcement action enough?  Two weeks before?  This "early enough" test ignores Court precedent which focuses not on the timing of the claim, but on the *nature* of the claim.  *See, e.g.*, *Thunder Basin*, 510 U.S. at 207 (looking to the three-factor test despite the claim being "pre-enforcement").  More fundamentally, nothing in the FTC Act suggests that Congress intended such an "early-in-the-investigation" test.

Commission's competence and expertise." 561 U.S. at 491. While the FTC possesses substantial expertise in the antitrust field and historic experience with particular industries, Axon's claim doesn't implicate such expertise. Instead, it relies on principles of due process and equal protection, which are "standard questions" of constitutional law that "courts have no disadvantage handling." *Id.* (simplified). The FTC's expertise might illuminate the clearance process, its origins, and its justifications, but it can't shed particular light on whether the process satisfies due process and equal protection guarantees.

Axon's claim is unlike the one in *Elgin* where agency expertise could answer "threshold questions" that may "obviate the need to address the constitutional challenge." *Elgin*, 567 U.S. at 22–23. In *Elgin*, agency expertise was only relevant for addressing "preliminary questions" which may have demonstrated that the plaintiffs suffered *no* statutory injury at all and disposed of the need to address the constitutional question. *Id.* But here, Axon's claim is a "question[] of administrative law," like that in *Free Enterprise Fund*, 561 U.S. at 491, which are left for courts to decide. Indeed, no FTC finding on an antitrust question could negate the injury Axon experienced from being subject to a putatively unconstitutional clearance process. In other words, the FTC's expertise on antitrust matters can't moot Axon's claimed injuries and so the constitutional question must be reached regardless of any agency's determination.

\* \* \*

Given that all three *Thunder Basin* factors indicate that jurisdiction stripping would be inappropriate here, I would

reverse the district court's dismissal of the clearance process claim.[6]

## B. Axon's Article II Challenge to FTC's ALJs

Axon also alleges that the FTC's ALJs are unconstitutionally shielded from removal by the Executive. The FTC is headed by five Commissioners, nominated by the President and confirmed by the Senate. 15 U.S.C. § 41. The President may not remove Commissioners during their seven-year terms except for "inefficiency, neglect of duty, or malfeasance in office." *Id*. In turn, the Commissioners appoint ALJs who can only be removed for good cause. *See* 5 U.S.C. § 7521(a), (b)(1). Axon asserts this is an impermissible dual layer of protection from Executive control. *See* U.S. Const. art. II, § 1, cl. 1, 3. In this way, Axon's claim closely mimics the Article II argument made

---

[6] The majority contends that it is following "every other circuit that has addressed a similar issue" in finding no district court jurisdiction over any of Axon's claims. Maj. Op. 5. First, if so, those other decisions conflict with our court's precedent. *See Mace*, 34 F.3d at 858–60; *Americopters*, 441 F.3d at 735–36; *Latif*, 686 F.3d at 1128–29. Second, I am not so sure that every other circuit agrees with the majority. The Fifth Circuit has recently granted rehearing en banc in a directly analogous case and, thus, has vacated a panel decision following the majority's reasoning. *See Cochran v. SEC*, 978 F.3d 975 (5th Cir. Oct. 30, 2020). Finally, I find the dissents in several of those cases to be more persuasive. *See Cochran v. SEC*, 969 F.3d 507, 519 (5th Cir. 2020) (Haynes, J., dissenting) (distinguishing *Elgin* and *Thunder Basin* because the parties there challenged "the constitutionality of a substantive statute that gave rise to an administrative action" rather than "the constitutional grounding of the agency overseeing the proceedings."); *Tilton v. SEC*, 824 F.3d 276, 298 (2d Cir. 2016) (Droney, J., dissenting) ("Forcing the appellants to await a final Commission order before they may assert their constitutional claim in a federal court means that by the time the day for judicial review comes, they will already have suffered the injury that they are attempting to prevent.").

in *Free Enterprise Fund*, 561 U.S. at 495–97 (holding that Article II forbids providing two layers of tenure protections to officers of the United States).

On initial consideration, it appears that Axon's complaint here is tied to the FTC's merits determination since it only sustains an injury upon an ALJ sanction. But on closer inspection, that's not the case. According to Axon, its injury is rooted in the violation of the separation of powers, apart from any FTC antitrust penalty. I agree that the Constitution's structural provisions "protect[] the liberty of all persons" by ensuring no government entity acts "in excess of [its] delegated governmental power." *Bond v. United States*, 564 U.S. 211, 222 (2011). Thus, when an agency violates this principle, "liberty is at stake," *id.*, and it "create[s] a 'here-and-now' injury," *Free Enterprise Fund*, 561 U.S. at 513. *See also Seila Law*, 140 S. Ct. at 2196 ("[W]hen [a tenure protection] provision violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court."). In other words, a government agency inflicts injury on a person whenever it subjects that person to unconstitutional authority—regardless of whether a sanction is levied by the agency. *Free Enterprise Fund*, 561 U.S. at 513. Thus, even without an FTC finding of an antitrust violation, Axon raises a cognizable injury by being made to appear before a putative unconstitutional officer.

With this understanding of Axon's ALJ challenge, its *Thunder Basin* analysis largely tracks that of the clearance process claim, and, thus, it should not have been precluded from district court jurisdiction. After all, to guarantee Article III review of its ALJ challenge, Axon would similarly have to incur the very harms it seeks to avoid. The firm would need to be subject to the ALJ, an officer it argues

is unconstitutionally insulated from Executive control, and intentionally lose its case on the merits before the FTC.  Only then could a cease-and-desist order issue, allowing Axon to litigate its constitutional injury before an Article III court.  But if Axon prevails on the antitrust merits before the FTC, its ALJ claim will never reach a federal judge and will never be reviewed outside of the very agency it challenges.  And even if Axon does reach a court, the company could not obtain injunctive or declaratory relief under the limited remedies of the FTC Act.  *See* 15 U.S.C. § 45(c).

The constitutionality of the FTC ALJs is also wholly collateral to the merits of Axon's alleged antitrust violation—each with distinct injuries and separate remedies.  For example, an Axon victory on its ALJ claim would not be dispositive on any allegation that it violated antitrust laws.  Indeed, Axon could still be prosecuted for violating antitrust laws regardless of whether the ALJs' tenure protection fails to comply with the Constitution.

Finally, as with the clearance process claim, whether the ALJs' removal protections violate Article II is a "standard question[] of administrative law," which doesn't turn on statutory questions within the FTC's expertise.  *Free Enterprise Fund*, 561 U.S. at 491.  For example, no amount of antitrust expertise can tell us whether ALJs must be directly removable by the President.  Nor are there threshold statutory questions "squarely within" the FTC's expertise that "may obviate the need to address the constitutional challenge."  *Elgin*, 567 U.S. at 22–23.

I would therefore hold that all three *Thunder Basin* factors—meaningful review, wholly collateral, and agency expertise—favor district court jurisdiction on this claim.  I would reverse the district court's dismissal of Axon's Article II claim against the FTC ALJs.

## C. Axon's Due Process Challenge to FTC's Investigatory, Prosecutorial, and Adjudicative Functions

Axon finally contends that the FTC's administrative adjudicatory process violates due process by combining the role of investigator, prosecutor, and adjudicator within one agency. Although Axon cloaks this claim as one about an unconstitutional structure, at bottom, it is a complaint about the agency's individualized merits determination. So, I agree that this claim is precluded from district court review.

In Axon's view, the FTC's structure is "inherently biased." Under the FTC Act, the agency investigates antitrust violations, *see* 15 U.S.C. § 57b-1; it prosecutes the enforcement action, *see* 16 C.F.R. § 3.11; and then it adjudicates any appeal from an ALJ's initial decision, *id.* § 3.52. Axon asserts that its structure has granted the FTC an "undisputed 100% win rate" within the administrative process for the past 25 years. As a result, Axon believes it is a "virtual certainty" that it will lose its case before the Commission, which violates due process protections.

Although Axon maintains that the FTC is unconstitutionally structured, what it really fears is the FTC determining that it violated antitrust laws. Unlike Axon's other claims, a biased adjudicatory process only injures Axon if it results in an unfavorable order. Such a loss will necessarily be encapsulated in an FTC sanction, which is directly appealable to the circuit court and can be set aside, affording Axon meaningful review and full relief. *See* 15 U.S.C. § 45(c).

Since this claim falls squarely within the FTC's province and expertise and any injury flowing from the alleged constitutional violation will be guaranteed a court of appeals

review, I would hold that all three *Thunder Basin* factors—meaningful judicial review, wholly collateral, and agency expertise—favor the FTC's exclusive jurisdiction here.  I thus concur in affirming the district court's dismissal of this claim.

## III.

Congress established the FTC's administrative process to adjudicate the merits of antitrust enforcement actions.  But Congress did not completely eliminate the district court's role in adjudicating constitutional claims against the FTC.  To be sure, for some claims, when the constitutional issue is directly intertwined with the agency's individual merits decision, the agency should resolve the matter in the first instance.   As Court precedent shows, Axon's claim of unconstitutional bias is one example of such a claim.  But when "[p]laintiffs raise broad constitutional claims that do not require review of the merits," our precedent clearly permits parties to select their forum.  *Latif*, 686 F.3d at 1129.  Such is the case with Axon's constitutional claims against the clearance process and the FTC ALJs.

By forcing Axon's claims into the FTC administrative process, we effectively shut the courtroom doors to a party seeking relief from alleged constitutional infringements.  Now, Axon's only recourse is to antagonize the FTC into prosecuting the enforcement proceeding against it and then lose in that forum—all the while, further subjecting the company to the harm it seeks to avoid.  The FTC Act does not mandate this unfortunate result.  Both the Constitution and our precedent counsel against it, too.  For that reason, I respectfully dissent from the dismissal of Axon's clearance process and ALJ claims.