RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

POLYWEAVE PACKAGING, INC., a Delaware corporation,

        *Plaintiff-Appellant*,

    *v.*

PETER PAUL MONTGOMERY BUTTIGIEG, Secretary, United States Department of Transportation, in his official capacity,

        *Defendant-Appellee*.

No. 21-5929

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Owensboro.
No. 4:21-cv-00054—Joseph H. McKinley, Jr., District Judge.

Argued: May 5, 2022

Decided and Filed: October 20, 2022

Before: ROGERS, KETHLEDGE, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Sheng Li, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., for Appellant. Edward Himmelfarb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Sheng Li, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., Christopher Wiest, CHRIS WIEST, ATTORNEY AT LAW, PLLC, Crestview Hills, Kentucky, for Appellant. Edward Himmelfarb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

      ROGERS, J., delivered the opinion of the court in which KETHLEDGE, J., joined. MURPHY, J. (pp. 16–25), delivered a separate opinion concurring in the judgment.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.   When Congress places judicial review of certain types of agency action in the court of appeals rather than the district court, this jurisdictional allocation cannot be circumvented by suing in the district court to challenge agency procedures used (or omitted) in the proceedings leading to such actions, at least where court-of-appeals jurisdiction provides a fully effective forum to address such arguments.   This venerable principle without more supports the district court's dismissal of plaintiff's claims in this case.

Plaintiff Polyweave Packaging, Inc. makes packaging for the safe transportation of hazardous materials.   Following an investigation of Polyweave, the Pipeline and Hazardous Materials Safety Administration—an operating administration within the Department of Transportation—issued an order finding that Polyweave had violated federal regulations and assessed a civil penalty of $14,460.   In addition to seeking judicial review of that civil-penalty order in the court of appeals, Polyweave brought this action in district court seeking injunctive and declaratory relief to prevent the Department of Transportation from rescinding a regulation known as Subpart D.   Subpart D sets forth several requirements for enforcement actions taken by DOT operating administrations, such as the enforcement proceeding against Polyweave. Polyweave argues that the DOT improperly rescinded Subpart D and alleges that Polyweave has incurred procedural injury in the underlying enforcement proceeding as a result.   The district court however lacked jurisdiction over Polyweave's claims because the court of appeals' exclusive jurisdiction over judicial review of the underlying agency order bars Polyweave from attempting to litigate the rescission of Subpart D in the district court.

**I.**

As alleged in the complaint, the Pipeline and Hazardous Materials Safety Administration (PHMSA) began investigating Polyweave in March 2015 after one of the PHMSA's inspectors paid an unannounced visit to Polyweave's Madisonville, Kentucky facility.   On December 30, 2016, PHMSA attorneys signed a Notice of Probable Violation, alleging that Polyweave had committed four violations of federal regulations prior to November 2015.   Polyweave learned

about that notice in February 2017, and Polyweave's president asked the PHMSA's Office of Chief Counsel to adjudicate the matter. The PHMSA's Chief Counsel issued an order on July 20, 2020, finding that Polyweave had committed the violations and assessing a fine of $14,460. Polyweave was served with this order on March 8, 2021,[1] and Polyweave timely filed an administrative appeal. After Polyweave filed the separate lawsuit in district court, the PHMSA issued a final order denying Polyweave's administrative appeal, and Polyweave timely filed an appeal of that order to the Sixth Circuit pursuant to 49 U.S.C. § 5127.

The crux of the separate litigation in the district court below involves a set of regulations known as Subpart D, which was originally promulgated by the Secretary of the Department of Transportation to establish certain requirements to be followed in enforcement proceedings. Subpart D was promulgated on December 27, 2019, following a memorandum by the DOT's general counsel, titled, "Procedural Requirements for DOT Enforcement Actions" and Executive Order 13982, titled, "Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication." Administrative Rulemaking, Guidance, and Enforcement Procedures, 84 Fed. Reg. 71714, 71715–16, 71718 (Dec. 27, 2019) (to be codified at 49 C.F.R. §§ 5.53–5.111); *see also* R. 1-2 (General Counsel Memo); Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication, 84 Fed. Reg. 55239 (2019) (Executive Order 13982). The then-Secretary, Elaine Chao, promulgated Subpart D pursuant to her general rulemaking authority under 49 U.S.C. § 322(a). Administrative Rulemaking, Guidance, and Enforcement Procedures, 84 Fed. Reg. at 71718. The DOT did not engage in notice and comment rulemaking when adopting Subpart D because the final rule "merely incorporate[d] existing internal procedures applicable to the Department's administrative procedures into the Code of Federal Regulations." *Id.* at 71716.

Subpart D set out several requirements that "appl[ied] to all enforcement actions taken by each DOT operating administration (OA) and each component of the Office of the Secretary of Transportation (OST) with enforcement authority." 49 C.F.R. § 5.53 (2020); Administrative Rulemaking, Guidance, and Enforcement Procedures, 84 Fed. Reg. at 71729. Polyweave

---

[1]The delay in Polyweave's learning of the Notice of Probable Violation and the order was due to service at the wrong address by the PHMSA.

acknowledges that some of these requirements are "procedural rules of agency organization, procedure, or practice." Polyweave also contends that some of the requirements in Subpart D are "substantive rules affecting Polyweave's due-process rights and protections." These requirements include: 49 C.F.R. §§ 5.59 (Enforcement policy generally), 5.61 (Investigative functions), 5.65 (Proper exercise of prosecutorial and enforcement discretion), 5.67 (Duty to review for legal sufficiency), 5.69 (Fair notice), 5.83 (Duty to disclose exculpatory evidence), 5.97 (Basis for civil penalties and disclosures thereof). *See* 84 Fed. Reg. at 71729–71732. For example, Subpart D requires DOT operating administrations—such as the PHMSA—to follow the principle articulated in *Brady v. Maryland*, 373 U.S. 83 (1963), and disclose any exculpatory evidence in the agency's possession to the subject of the enforcement action. 49 C.F.R. § 5.83 (2020); *see* Administrative Rulemaking, Guidance, and Enforcement Procedures, § 5.83, 84 Fed. Reg. at 71731.

On April 2, 2021, following the change of presidential administrations, the current Secretary, Pete Buttigieg, rescinded Subpart D.[2] *See* 86 Fed. Reg. 17292, 17294 (2021). The Secretary did not engage in notice and comment as part of the decision to rescind Subpart D because, he said, the rescission "revises only internal processes applicable to the Department's administrative procedures," and the rule is therefore "a rule of agency procedure for which notice and comment are not required." 86 Fed. Reg. at 17293; *see* 5 U.S.C. § 553(b)(A).

While Polyweave's administrative appeal of the civil-penalty order was pending, Polyweave brought this action in district court seeking injunctive and declaratory relief to prevent the Secretary from rescinding Subpart D. Polyweave explains in its appellate briefing that it filed suit "to restore Polyweave's due-process rights in its ongoing administrative appeal." In its complaint, Polyweave contended that, if the Secretary had not improperly rescinded the requirements outlined in Subpart D, the PHMSA would not have been able to assess the civil penalty against Polyweave in the underlying enforcement proceeding.

---

[2]The Secretary rescinded Subpart D (April 2, 2021) after Polyweave filed its administrative appeal of the civil-penalty order (March 25, 2021) but before Polyweave requested exculpatory evidence in the underlying enforcement proceeding (May 6, 2021).

At bottom, Polyweave contends that the rescission of Subpart D violated the Administrative Procedure Act for two reasons: first, Polyweave argues that the Secretary's decision should be set aside because the Secretary's reasons for rescinding Subpart D are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; second, Polyweave asserts that the Secretary failed to provide it with notice and an opportunity to comment on the decision to rescind Subpart D.

The Secretary moved to dismiss Polyweave's claims, arguing that the district court lacked jurisdiction because Polyweave did not have standing to assert those claims and because 49 U.S.C. § 5127 placed exclusive jurisdiction over Polyweave's claims in the court of appeals, not the district court. The district court granted the motion to dismiss. The district court evaluated each of Polyweave's asserted injuries and concluded that none was sufficient to establish standing to challenge the rescission of Subpart D.

The district court also considered in the alternative whether Polyweave's claim was barred by the exclusive-jurisdiction provision of PHMSA's organic statute. The court determined that the language of the exclusive-jurisdiction provision, 49 U.S.C. § 5127, did not bar Polyweave's APA claims because the language of the statute limits the scope of the exclusive jurisdiction to final action of the Secretary under Chapter 51 of Title 49 (enforcement actions for transport of hazardous waste), not to "the Secretary's rulemaking authority generally." Further, the court determined that Polyweave's challenge was not inescapably intertwined with the underlying enforcement action.

The court alternatively concluded that, even if it had jurisdiction, Polyweave was not entitled to a preliminary injunction because Polyweave had not established a likelihood of success on the merits of either of its claims or that Polyweave would suffer irreparable harm without an injunction. With regard to Polyweave's arbitrary-and-capricious claim, the court determined that the Secretary's decision to rescind Subpart D was judicially unreviewable because the decision was committed to agency discretion by law. *See* 5 U.S.C. § 702(a)(2).

The court also concluded that Polyweave had not established a likelihood of success on its notice-and-comment claim because the Secretary needed to use only the same procedures to repeal Subpart D as were used to promulgate Subpart D. The court determined that since the

former Secretary did not engage in notice and comment to promulgate Subpart D, the Secretary did not violate the APA's notice-and-comment requirements when he rescinded Subpart D without notice and comment. Relying on "the same reasons that doomed Polyweave's standing arguments," the court also determined that Polyweave would not suffer irreparable harm without a preliminary injunction. Polyweave appeals.

## II.

We need not address either the district court's standing analysis or its preliminary rulings on the merits of Polyweave's claims. Affirmance is required because the district court lacked jurisdiction to consider Polyweave's APA claims. The only plausible bases for asserting Article III injury in this case, which involves enforcement procedures, can be asserted in review of the agency action in which those procedures were applied or withheld, review that lies exclusively in the court of appeals.

Under 49 U.S.C. § 5127(c) of the Hazardous Materials Transportation Act, "a person adversely affected or aggrieved by a final action of the Secretary under [] chapter [51] may petition for review of the final action in the United States Court of Appeals for the District of Columbia or in the court of appeals for the United States for the circuit in which the person resides or has its principal place of business." That "court has exclusive jurisdiction, as provided in subchapter II of chapter 5 of title 5, to affirm or set aside any part of the Secretary's final action and may order the Secretary to conduct further proceedings." *Id.* This exclusive jurisdiction applies to Polyweave's enforcement proceeding brought by the PHMSA, an operating administration of the DOT. The exclusive-jurisdiction provision applies also to Polyweave's APA claims here because Polyweave's claims effectively seek a determination of what procedures apply in Polyweave's underlying enforcement proceeding, and Polyweave's APA claims are therefore inescapably intertwined with the civil-penalty order. Exclusive jurisdiction "necessarily preclude[s] de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 337 (1958).

Because Polyweave's alleged injuries in this case are incurred as part of the enforcement proceeding and Polyweave could argue on court-of-appeals review of the civil-penalty order that

Subpart D was invalidly rescinded, Polyweave's claims brought in the district-court suit are inescapably intertwined with the civil-penalty order and therefore outside the jurisdiction of the district court. As the basis for challenging the rescission of Subpart D, Polyweave alleges that it was injured by the civil-penalty order from the underlying enforcement proceeding. Each of Polyweave's standing arguments asserted that Polyweave was injured because of the alleged failure to comply with Subpart D in the underlying proceeding. Moreover, the court of appeals would have authority on direct review of the final PHSMA order to provide meaningful review of Polyweave's claim that Subpart D was improperly rescinded. To the extent that Polyweave has standing at all to challenge the rescission of Subpart D, Polyweave's claim that the Secretary did not adhere to the APA when he rescinded Subpart D could be litigated as part of Polyweave's challenge to the civil-penalty order. For example, if the PHMSA argued on direct review of its civil-penalty order that Polyweave is not entitled to the requirements in Subpart D because that regulation was properly rescinded, Polyweave can argue that the PHMSA is still required to follow Subpart D because the Secretary did not validly rescind Subpart D. As a general matter, a party seeking appellate review of an agency order may raise procedural challenges to the applicable agency regulations as a basis for reversing the order. *See Oakbrook v. Land Holdings, LLC v. Comm'r of Internal Revenue*, 28 F.4th 700, 710 (6th Cir. 2022).

Both Supreme Court precedent and persuasive circuit cases illustrate that exclusive-jurisdiction provisions apply to non-collateral issues such as Polyweave's APA claims.

The Supreme Court's opinion in *City of Tacoma* supports a broad interpretation of exclusive statutory assignments to courts of appeals of the jurisdiction to review final agency actions. In that case, the Federal Power Commission issued a license to construct a power plant to the city of Tacoma. 337 U.S. at 326. The State of Washington appealed the issuance of that license to the Ninth Circuit, which the Ninth Circuit eventually affirmed. *Id.* at 327–28. In a separate state-court proceeding, however, Washington asserted a cross-claim that raised the same objections Washington had made before the Ninth Circuit. *Id.* at 329. The Washington Supreme Court affirmed a state-court order that enjoined the City from proceeding on the project. *Id.* at 332. The United States Supreme Court concluded that an exclusive-jurisdiction provision

required Washington to raise its objections to the license only in the relevant federal court of appeals. *Id.* at 335–336. The Supreme Court explained:

> It can hardly be doubted that Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had. So acting, Congress in § 313(b) prescribed the specific, complete and exclusive mode for judicial review of the Commission's orders. It there provided that any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission in the motion for rehearing, by the Court of Appeals which "shall have exclusive jurisdiction to affirm, modify or set aside such order in whole or in part," and that "[t]he judgment and decree of the court, affirming, modifying , or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification." It thereby necessarily precluded de novo litigation between the parties of *all issues inhering in the controversy*, and all other modes of judicial review. Hence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all. For Congress, acting within its powers, has declared that the Court of Appeals shall have "exclusive jurisdiction" to review such orders, and that its judgment "shall be final," subject to review by this Court upon certiorari or certification.

*Id.* at 335–36 (internal citations omitted) (alteration in original, emphasis added). The Court explained further that the scope of the exclusive-jurisdiction provision was not limited to the objections actually raised in the Court of Appeals; the exclusive-jurisdiction provision barred all claims that "could and should have been raised" in the Court of Appeals review of the Commissioner's order. *Id.* at 339.

Our sister circuits have consistently applied the principles in *City of Tacoma* to dismiss district-court actions where the plaintiffs' claims are inescapably intertwined with an administrative order that is subject to an exclusive-jurisdiction provision. In *Tur v. FAA*, 104 F.3d 290 (9th Cir. 1997), for example, Tur brought suit against Federal Aviation Administration (FAA) attorneys in district court after the FAA issued an ordering revoking Tur's helicopter pilot's license. *Id.* at 291. Tur alleged that the FAA attorneys deprived him of a property interest (his airman's certificate) without due process by knowingly using false testimony against him in the administrative proceeding. *Id.* The Ninth Circuit reasoned that Tur's separate lawsuit was inescapably intertwined with the FAA's revocation order because "Tur's suit, if allowed to

proceed, would result in a new adjudication over the evidence and testimony adduced in the October 1991 hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ." *Id.* at 292. The applicable exclusive-jurisdiction provision therefore barred Tur from bringing a *Bivens* action to vindicate his constitutional rights in a separate suit. *Id.* Polyweave's APA claims suffer from the same flaw. If Polyweave were allowed to maintain its APA claims against the Secretary in a separate suit, the district court would be required to determine whether the PHMSA had complied with Subpart D—an issue that would be decided on direct review—in the analysis of whether Polyweave had standing to bring the APA challenge.

The Fifth Circuit reasoned similarly in another case involving an FAA order. *Ligon v. LaHood*, 614 F.3d 150 (5th Cir. 2010). In that case the Fifth Circuit concluded that a district court lacked jurisdiction to consider Ligon's Age Discrimination in Employment Act (ADEA) challenge to an FAA order. There the FAA issued an order declining to renew some of Ligon's delegated authority to inspect and issue certificates that identified aircraft as compliant with FAA regulations. *Id.* at 152–53. Ligon filed suit in district court, seeking damages and injunctive relief pursuant to the ADEA. *Id.* at 153. The Fifth Circuit noted that "district courts lack jurisdiction not only over direct challenges to FAA orders, but also over damages claims that are 'inescapably intertwined with a review of the procedures and merits surrounding an FAA order,'" and "parties may not avoid administrative review simply by fashioning their attack on an FAA decision as a constitutional tort claim against individual FAA officers." *Id.* at 155 (citation omitted). After surveying other circuits' application of the same inescapable-intertwinement test, the Fifth Circuit concluded that Ligon's ADEA claims were inescapably intertwined with the underlying administrative order for two reasons. First, "Ligon's challenge requires a review and balancing of the same evidence used by the FAA in deciding not to renew his areas of authority, and is essentially a challenge to the merits and procedure of a particular order that is currently pending against Ligon." *Id.* at 157. Second, Ligon could have sought his requested relief—reinstatement—in a direct review of the underlying proceeding. *Id.* Further, the Fifth Circuit rejected the contention that the inescapable-intertwinement test could be limited to *Bivens* claims; "[i]nstead, what matters is whether the challenge is inescapably intertwined with a challenge to the order, and would therefore undermine Congress's intention that FAA orders be

reviewed in a certain way." *Id.* at 157 n.4.  See also *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 265 (2d Cir. 1999).

To be sure, there are two cases in which our court has indicated that a district court could properly exercise jurisdiction over a claim even though the claim was arguably inescapably intertwined with an order reviewable exclusively in the court of appeals.  But these cases are categorically different.  In *Burdue v. FAA*, 774 F.3d 1076 (6th Cir. 2014), we concluded that Burdue's Fifth Amendment due-process challenge to his termination was not inescapably intertwined with the FAA's order revoking his certificate to inspect aircraft.  Although we acknowledged our sister circuit's cases that prohibited separate *Bivens* actions that required "a review of the procedures and merits surrounding the FAA's order," we distinguished Burdue's claims because "Burdue's constitutional claims are broad challenges to FAA procedures and are not contingent on the merits of a particular FAA order."  *Id.* at 1083–84 (citations omitted).  In reaching this conclusion, we relied on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) for the proposition that "a district court may review 'general collateral challenges to unconstitutional practices,'" at least where precluding review in the district court "would prevent meaningful review of Burdue's constitutional claims."  *Id.* at 1083–84.  But Polyweave's case does not involve general collateral challenges to unconstitutional practices, and all of Polyweave's statutory and constitutional claims in this case can be meaningfully reviewed in court of appeals review of the enforcement order.  Polyweave's claims are challenges under the APA that Polyweave simply cannot bring independently of the enforcement proceeding that is exclusively reviewable in the court of appeals.

In the second case, *Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015), we concluded that the relevant exclusive-jurisdiction provision did not prohibit the district court from addressing the separate suit.  *Id.* at 815.  There, the Government argued in effect that "a *direct challenge to one agency's order* is inescapably intertwined with *another agency's order*."  *Id.* at 814.  Mokdad's separate lawsuit was challenging the Terrorist Screening Center's (TSC) decision to place him on the No Fly List.  *Id.* at 809.  The administrative order subject to an exclusive-jurisdiction provision, however, was the Transportation Security Administration's (TSA) order that denied Mokdad's relief under the Traveler Redress Inquiry Program.  *Id.*  The TSC is an interagency

center administered by the FBI while the TSA is located within the Department of Homeland Security. *Id.* at 809, 812. Congress separated the responsibility for placing individuals on the No Fly List (TSC) from the responsibility to establish redress procedures for travelers who think they were incorrectly included on the No Fly List (TSA). *Id.* at 812. As a result, "we decline[d] to accept the government's invitation to expand the inescapable-intertwinement doctrine so as to find that Mokdad's claim against the TSC is pulled within the ambit of the exclusive-review statute that applies to TSA." *Id.* at 815. Polyweave's claim here clearly differs from the claims in *Mokdad* because Polyweave is not challenging the action of a separate agency. Instead, Polyweave is challenging the rules—set by the DOT—that apply in an administrative proceeding run by the PHMSA, a part of the DOT. Our decision in *Mokdad* therefore does not require, or even support, allowing Polyweave to maintain its APA claims in a separate action.

The conclusion that the exclusive-jurisdiction provision prohibits Polyweave from litigating its APA claims in the district court is also consistent with the Supreme Court's holding in *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477 (2010), declining to interpret a statutory judicial review provision as exclusive, and distinguishing for that purpose the reasoning of the Supreme Court in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994). Though the Supreme Court generally assumes that procedures "are to be exclusive" when Congress "creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,'" that presumption does not apply to limit jurisdiction "if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enterprise Fund*, 561 U.S. at 489 (quoting *Thunder Basin Coal Co.*, 510 U.S. at 212–13). None of these characteristics supports allowing Polyweave to bring its APA claims in a separate action before the district court.

First, barring Polyweave's separate lawsuit would not deprive Polyweave of all meaningful review of its claims. As discussed above, Polyweave could unquestionably have obtained meaningful judicial review of its APA claims on direct review of the civil-penalty order. Moreover, this is not a case where Polyweave is being forced to "'bet the farm . . . by taking violative action' before 'testing the validity of the law,'" such that Polyweave is therefore

unable to access a meaningful avenue of relief. *See Free Enter. Fund*, 561 U.S. at 490 (citations omitted). Here, Polyweave does not challenge the PHMSA's authority to conduct enforcement proceedings; Polyweave takes issue only with the rules that apply once the PHMSA initiates proceedings. The applicable rules only matter to Polyweave once it is the subject of an enforcement proceeding. Thus, Polyweave can be injured from the rescission of Part D only in the course of being the subject of an enforcement proceeding, and that enforcement proceeding provides Polyweave a meaningful avenue of relief through direct review of the civil-penalty order. As a result, Polyweave does not need to intentionally violate federal regulations to test the validity of Subpart D; instead Polyweave must simply wait until it has suffered an alleged Article III injury by being denied the requirements in Subpart D, and then Polyweave can litigate Subpart D's validity on direct review of any adverse order. Accordingly, requiring Polyweave to litigate its APA claims on direct review of the civil-penalty order does not deprive Polyweave of all meaningful review of those claims.

Second, Polyweave's APA challenge to the rescission of Subpart D is not wholly collateral to the civil-penalty order; indeed, it is not collateral at all. Polyweave's objection to the rescission of Subpart D *requires* that Polyweave be subject to Subpart D in the enforcement process in order for Polyweave have standing at all to challenge the rescission. Polyweave argues that its challenge to the rescission of Subpart D is entirely different from challenges to the Secretary's final action under Chapter 51, which are within the exclusive-jurisdiction provision of 49 U.S.C. § 5127, because the DOT's authority to issue and amend Subpart D comes from 49 U.S.C § 322. The Supreme Court considered and rejected a similar argument in *Elgin v. Dep't of Treasury*, 567 U.S. 1, 21 (2012). There, the petitioners contended that their bill-of-attainder and sex-discrimination claims had "nothing to do with the types of day-to-day personnel actions adjudicated by the MSPB." *Id.* at 21–22. The Supreme Court rejected this contention because, "[a]s evidenced by their district court complaint, petitioners' constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* at 22. From the face of Polyweave's complaint, Polyweave has brought its APA claims to the recission of Subpart D in an effort to undo the underlying enforcement proceeding. Polyweave's complaint states, "Upon information and belief, but [for] its decision to imminently

rescind Subpart D, the Department would not, and indeed could not, have taken" enforcement action against Polyweave for its alleged violation of federal regulations. Further, Polyweave's standing arguments each depend on Polyweave's currently being subject to an enforcement proceeding. Polyweave's case also is not distinguishable on the ground that Polyweave has drafted its lawsuit without seeking directly to enjoin the civil-penalty order. But by seeking a ruling about what rules apply in the underlying enforcement proceeding, Polyweave is effectively attacking the validity of the civil-penalty order. To conclude otherwise would prove too much. A party could always circumvent an exclusive-jurisdiction provision applicable to agency action by challenging the promulgation/rescission of the rules used in an agency proceeding rather than the order resulting from the proceeding. As a result, Polyweave's APA claims are not collateral, much less "wholly" collateral, to the civil-penalty order.

Third, Polyweave's claims do not fall entirely outside the PHMSA's expertise. True, the PHMSA may not be able to adjudicate the specific claim that the Secretary violated the APA when he rescinded Subpart D, but the PHMSA's expertise could be brought to bear on other issues that could resolve the enforcement proceeding in Polyweave's favor. For example, the PHMSA could have concluded that it did follow all of the procedures in Subpart D, regardless of whether Subpart D was rescinded—as the PHMSA has in fact claimed—and if confirmed on direct review, that would mean that Polyweave has suffered no harm that would give it standing to challenge the rescission of Subpart D. Or, the PHMSA could simply conclude—as Polyweave claims it should—that Polyweave did not violate any regulations, and that would resolve Polyweave's enforcement proceeding in its favor. As the Supreme Court has explained in another context, where an agency's "expertise can otherwise be 'brought to bear' on [] appeals that challenge the constitutionality of a statute, we see no reason to conclude that Congress intended to exempt such claims from exclusive review [before the agency and the court of appeals]." *Elgin*, 567 U.S. at 23 (quoting *Thunder Basin*, 510 U.S. at 214–15). Because the PHMSA's expertise could be brought to bear on various issues that address Polyweave's enforcement proceeding, the possibility that the PHMSA is not be able to adjudicate Polyweave's APA claim does not support presuming that the claim falls outside the exclusive-jurisdiction provision in 49 U.S.C. § 5127. Thus, none of the *Thunder Basin* factor supports allowing Polyweave to bring its APA claims in a separate suit before the district court.

We recognize that the Supreme Court has granted certiorari in cases from two other circuits involving whether district courts lack jurisdiction to review, in particular, Appointments Clause challenges to the legitimacy of Administrative Law Judges, because of organic act provisions permitting federal court of appeals review of the agency's final orders. *See Cochran v. SEC*, 20 F.4th 194, 198 (5th Cir. 2021) (en banc); *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1180 (9th Cir. 2021). Over a strong dissent, the en banc Fifth Circuit in *Cochran* held that 15 U.S.C. § 78y of the Securities Exchange Act did not preclude such an action in the district court, while the Ninth Circuit held to the contrary under analogous provisions of the Federal Trade Act, 986 F.3d at 1181-89, finding support in opinions of the D.C., Second, and Fourth Circuits. *Id.* at 1188. The Fifth Circuit's outlier decision in *Cochran,* however, is in any event distinguishable from Polyweave's case. The Fifth Circuit relied specifically not only on the permissive nature of the grant of jurisdiction to the court of appeals in 5 U.S.C. § 78y of the Securities Exchange Act, but also on a negative inference from explicit language in 15 U.S.C. § 78y(a)(3) providing that court of appeals jurisdiction "becomes exclusive" only on the filing of the petition from the order and the SEC's filing of its record. C*ochran v. SEC*, 20 F.4th at 207. There is no such timing limitation in § 5127. The Fifth Circuit also relied strongly on the structural nature of Cochran's challenge:

> The nature of [Cochran's] challenge is structural—it does not depend on the validity of any substantive aspect of the Exchange Act, nor of any SEC rule, regulation, or order. Indeed, she is challenging the Exchange Act's statutory-review scheme itself. . . . Further, the outcome of her constitutional challenge to the ALJs' removal protection will have no bearing on her ultimate liability for allegedly violating the securities laws.

C*ochran v. SEC*, 20 F.4th at 207. Polyweave's challenges are plainly not "structural" in the sense relied upon by the Fifth Circuit.

Finally, there is no merit to Polyweave's contention at oral argument that requiring it to bring its claims on direct appeal through 49 U.S.C. § 5127 would create a nonsensical dichotomy. The asserted anomaly is that the exclusive-jurisdiction provision would apply to Polyweave's claims if Polyweave was subject to an enforcement proceeding, but the provision would not apply if Polyweave—or some other party—filed the same challenge before it was subject to an enforcement proceeding. Oral Argument at 5:54–6:15. That argument appears to

suggest that parties with generalized grievances might be able to challenge the rescission of Subpart D, which itself is a dubious proposition. The argument fails to recognize that each of Polyweave's standing arguments depends on Polyweave's currently being subject to an enforcement proceeding. Polyweave does not explain how the existence—or absence—of administrative proceedings would affect the court in which a party could challenge the rescission of Subpart D. In other words, to the extent that Polyweave had standing at all to challenge the recission of Subpart D, Polyweave can do so only on direct review of the civil-penalty order pursuant to 49 U.S.C. § 5127.

**III.**

For the foregoing reasons, we affirm the district court's dismissal of Polyweave's APA claims on the alternative ground that these claims are covered by the exclusive-jurisdiction provision in 49 U.S.C. § 5127(c).

---

## CONCURRING IN THE JUDGMENT

---

MURPHY, Circuit Judge, concurring in the judgment.  In December 2019, the Secretary of Transportation issued a final rule listing various procedures in the Code of Federal Regulations that agency officers should follow in all enforcement proceedings.  In April 2021, after a change in administrations, the Secretary issued another final rule rescinding these procedural regulations.  Enmeshed in an enforcement proceeding throughout this time, Polyweave Packaging sued the Secretary over the decision to rescind the regulations.  I agree with my colleagues that we should affirm the district court's dismissal of Polyweave's suit.  But I would take a different path to that result.  I would not hold that the district court lacked jurisdiction because of a statute that gives circuit courts the exclusive power to review the "final action" in Polyweave's specific enforcement proceeding.  When Polyweave sued, the agency had not even issued that action.  My colleagues' holding also implicates an issue pending at the Supreme Court that has engendered a circuit split.  I would instead follow the district court's reasoning: Polyweave failed to plead how the Secretary's rescission harmed it.  The company thus lacks Article III standing to challenge the rescission.

\*

The Secretary of Transportation enforces the laws (located in Chapter 51 of Title 49) that regulate the transportation of hazardous materials.  *See* 49 U.S.C. §§ 5101–5128.  Congress has delegated the Secretary's power to a subagency in the Department of Transportation: the Pipeline & Hazardous Materials Safety Administration (PHMSA).  *See id.* § 108(f).  PHMSA has read this delegation as giving it the power to issue civil penalties for violations of the chapter.  *See id.* § 5123(a)–(c).  Regulations govern the process by which PHMSA imposes civil penalties. 49 C.F.R. §§ 107.307–.331.  The agency first must issue a notice of probable violation, and the alleged offender may request an informal or formal hearing.  *Id.* §§ 107.311, -.317, -.319.  If the agency sticks with the finding of a violation after this hearing, the offender may appeal to the PHMSA's administrator.  *Id.* § 107.325(a)–(b).  The administrator then issues the final agency decision.  *See id.* § 107.325(d).

Congress has granted jurisdiction to the circuit courts to review a "final action" of PHMSA that imposes a civil penalty for a violation of Chapter 51:

> Except as provided in section 20114(c), a person adversely affected or aggrieved by a final action of the Secretary under this chapter may petition for review of the final action in the United States Court of Appeals for the District of Columbia or in the court of appeals for the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not more than 60 days after the Secretary's action becomes final.

49 U.S.C. § 5127(a). This section goes on to make clear that the aggrieved party must seek review exclusively through its procedure: "The court has exclusive jurisdiction, as provided in subchapter II of chapter 5 of title 5, to affirm or set aside any part of the Secretary's final action and may order the Secretary to conduct further proceedings." *Id.* § 5127(c).

According to Polyweave's complaint in this case, PHMSA issued a notice of probable violation to the company. Compl., R.1, PageID 13. Polyweave requested an informal hearing. *Id.* PHMSA's chief counsel found a violation and issued a fine. *Id.* In March 2021, Polyweave filed an appeal within the agency, as permitted by 49 C.F.R. § 107.325. *Id.*, PageID 14. In October, PHMSA's Chief Safety Officer rejected Polyweave's appeal and upheld the fine. *See Polyweave Packaging, Inc.*, Docket No. PHMSA-2020-0079 (Oct. 18, 2021). (It is unclear whether the administrator has properly delegated the duty to resolve appeals to this officer. *Cf.* 49 U.S.C. § 108(e); 49 C.F.R. § 107.301.) Polyweave filed a different petition for review in our court to challenge this "final action" under 49 U.S.C. § 5127(a). *See* Pet., R.1, No. 21-4202 (6th Cir.).

This suit does not challenge that final action. It instead concerns the Department of Transportation's evolving rulemaking. In December 2019, the Department placed procedural guidelines in the Code of Federal Regulations (at Part 5 of Title 49) to make transparent the rules that officers should follow when engaging in rulemakings, issuing guidance, or prosecuting enforcement actions. *See* 84 Fed. Reg. 71,714 (Dec. 27, 2019) (codifying 49 C.F.R. §§ 5.1–5.111). In Subpart D, the agency listed procedural protections for enforcement actions, including that officers should disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). *See* 49 C.F.R. § 5.83 (2020). But the regulations also made clear that they merely adopted rules to "improve the internal management" of the Department and did not create rights "enforceable"

in court. *Id.* § 5.111. Following a change in administrations, the new Secretary removed these "internal policies and procedures" from the Code of Federal Regulations in part on the ground that the agency need not publish them there. 86 Fed. Reg. 17,292, 17,292–93 (Apr. 2, 2021).

In May 2021, while Polyweave's internal agency appeal over the civil penalty remained pending before PHMSA's Chief Safety Officer, the company filed this separate action in district court. The action challenged the Secretary's decision to rescind the procedural guidance from the Code of Federal Regulations. Polyweave sought injunctive and declaratory relief against the rescission of Subpart D's procedures, claiming that the Secretary's recission had violated the Administrative Procedure Act (APA) for various reasons. Compl., R.1, PageID 5, 10–19.

The district court dismissed Polyweave's complaint. The court held that the complaint failed to plausibly plead Polyweave's Article III standing to challenge the removal of Subpart D. *Polyweave Packaging, Inc. v. Buttigieg*, 2021 WL 4005616, at *3–10 (W.D. Ky. Sept. 2, 2021). It did not, by contrast, view the judicial-review provision for challenging PHMSA's "final actions" (49 U.S.C. § 5127) as eliminating its subject-matter jurisdiction over this suit. *Id.* at *10.

*

My colleagues hold that 49 U.S.C. § 5127 gives circuit courts exclusive jurisdiction not just over a suit challenging PHMSA's final action in an enforcement proceeding but also over a suit that challenges other agency conduct that is "inescapably intertwined" with a PHMSA final action. For two reasons, I would not take this route to the resolution of Polyweave's suit.

*First*, this jurisdictional question implicates a circuit split that the Supreme Court will soon resolve. The en banc Fifth Circuit recently addressed a similar issue involving a statute (which mirrors § 5127) that grants circuit courts exclusive jurisdiction to review the SEC's final orders. *See Cochran v. SEC*, 20 F.4th 194, 198 (5th Cir. 2021) (en banc) (discussing 15 U.S.C. § 78y). The court held that this provision did not strip a district court of the jurisdiction to entertain a constitutional challenge to the SEC's structure brought by a private party subject to an ongoing SEC proceeding. *See id.* at 199–212. The Ninth Circuit, by contrast, recently addressed a similar issue involving a law granting circuit courts jurisdiction to review the FTC's cease-and-

desist orders.  *See Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1180 (9th Cir. 2021) (discussing 15 U.S.C. § 45(c)).  The court held that this provision stripped a district court of the jurisdiction to consider a constitutional challenge to the FTC's structure and procedures brought by a private party subject to an ongoing FTC proceeding.  *Id.* at 1177–89.  The Supreme Court granted review in both cases.  *See SEC v. Cochran*, 142 S. Ct. 2707 (2022); *Axon Enter., Inc. v. FTC*, 142 S. Ct. 895 (2022).

I do not see much daylight between these two cases and Polyweave's case.  Each one involves a legal challenge to an agency's general structure or procedures brought by a private party who was then immersed in an agency proceeding.  In none of the cases, however, had the agency issued a final action in the party's own proceeding.  If the Supreme Court agrees with the Ninth Circuit in *Axon* that the district court lacked subject-matter jurisdiction, it would go a long way toward vindicating my colleagues' reasoning here.  If, by contrast, the Supreme Court agrees with the Fifth Circuit in *Cochran* that the district court had subject-matter jurisdiction, it would go a long way toward showing that they mistakenly find that the district court lacked jurisdiction.  Given the unsettled nature of the law on this significant legal question, I would opt to avoid it.

*Second*, I tend to agree with the reasoning of the Fifth Circuit over the Ninth.  If one views this interpretive question through the Supreme Court's modern textualist lens, the question does not look particularly difficult.  *Cf. Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631–34 (2018).  Just as nothing in the text of 15 U.S.C. § 78y strips district courts of jurisdiction over a constitutional challenge to the SEC's structure, *see Cochran*, 20 F.4th at 199–201, so too nothing in the text of 49 U.S.C. § 5127 strips district courts of jurisdiction over a challenge to the Secretary of Transportation's rule rescinding Subpart D.  The text gives circuit courts exclusive jurisdiction only over "a final action of the Secretary under this chapter[.]"  49 U.S.C. § 5127(a), (c).  Yet Polyweave did not seek review of PHMSA's "final action" imposing a civil penalty under Chapter 51.  Indeed, PHMSA did not issue that final action until months after Polyweave sued.  The company instead sought review of the Secretary's general rulemaking.  And while the Secretary's rescission of Subpart D qualified as "final," the Secretary did not issue that general change (which covered all areas subject to the Department of Transportation's authority) "under"

the specific hazardous-materials chapter. The Secretary instead issued the change under his general rulemaking power. *See* 86 Fed. Reg. at 17,294 (citing 49 U.S.C. § 322(a)); *see also Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 629–30. So I do not see how § 5127 could be read to cover a suit like this one.

To be sure, my colleagues rightly recognize that the caselaw in this area has not traditionally focused on the text alone. Courts have developed two different common-law tests to determine the reach of exclusive-review provisions like § 5127. On the one hand, many decisions rely on *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), to suggest that an exclusive-review provision restricts review of other agency conduct that is "inescapably intertwined" with the final action covered by the provision. *See Mokdad v. Lynch*, 804 F.3d 807, 812–13 (6th Cir. 2015); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) (Sotomayor, J.); *see also Ligon v. LaHood*, 614 F.3d 150, 154–57 (5th Cir. 2010); *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997).

On the other hand, the Supreme Court has since developed a broader test. In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), it identified three questions to consider when deciding whether an exclusive-review provision covers a suit: Would preclusion of the challenge "foreclose all meaningful judicial review"? Is the challenge "wholly collateral" to the agency adjudication subject to the review provision? And is the challenge "outside the agency's expertise"? *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 212–13); *see Elgin v. Dep't of Treas.*, 567 U.S. 1, 15 (2012). Why do courts continue to rely on *City of Tacoma*'s inescapably intertwined test after *Thunder Basin*? The answer is not obvious to me. That test addresses only the second *Thunder Basin* factor: whether a suit is wholly collateral. *See Bebo v. SEC*, 799 F.3d 765, 773 & n.2 (7th Cir. 2015); *cf. Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 941–42 (D.C. Cir. 2021).

In all events, the Supreme Court in recent years has sometimes confronted older precedent that seemed to adopt a "functional" approach that decided how litigation should progress based on what would best promote judicial efficiency. *See Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 631–34. The Court has refused to extend the logic of this precedent when it was

"completely unmoored from the statutory text." *Id.* at 632. Because the *Thunder Basin* factors strike me as potentially "unmoored" from the text in the same way, the Court may well reach the same result in this area.

Even still, it is not clear to me that these factors justify the conclusion that § 5127 strips the district court of jurisdiction over Polyweave's APA claims. Admittedly, Polyweave could likely receive judicial review of the Secretary's rescission of Subpart D through its petition for review of PHMSA's final action imposing a civil penalty. *See Elgin*, 567 U.S. at 17, 19. But what would have happened if Polyweave had won that proceeding? How could it get review of an agency's general rule in that scenario? *Cf. Free Enter. Fund*, 561 U.S. at 490. In addition, Polyweave's suit is "collateral" to PHMSA's final action in the sense that Polyweave seeks only an injunction to reinstate Subpart D—not an injunction that would do anything to PHMSA's civil penalty. *Cf. id.* Unlike suits that seek to require an agency to arrive at a specific position in a specific adjudication, *cf. Elgin*, 567 U.S. at 22, the company challenges the legality of the Department of Transportation's general procedures, *cf. Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 675–76 (1986). Lastly, PHMSA does not have any particular "expertise" in handling such "standard questions of administrative law" as whether the Secretary should have gone through notice-and-comment rulemaking when rescinding Subpart D. *Free Enter. Fund*, 561 U.S. at 491.

\*

I would instead affirm the district court's holding that Polyweave lacks standing to challenge the rescission of Subpart D. The Constitution gives us jurisdiction only over "Cases" or "Controversies." U.S. Const. art. III, § 2. To establish a case or controversy, Polyweave needed to prove its standing. At the pleading stage, this element required the company to plausibly allege that it has suffered (or would likely suffer) an injury, that this injury traces to the elimination of Subpart D, and that its requested relief would redress (or prevent) the injury. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 536–37, 543–44 (6th Cir. 2021).

According to Polyweave, its complaint alleged that the Secretary's rescission of Subpart D caused four injuries. Polyweave argues that the rescission caused a constitutional injury because (it says) parties have a due-process right to obtain exculpatory evidence in agency

proceedings under *Brady*.    Appellant's Br. 14–21.    Even if *Brady* applies only in criminal prosecutions, Polyweave next argues that the rescission took away its "substantive rights" that Subpart D created.  *Id.* at 21–26.  Alternatively, Polyweave argues that it suffered an injury because PHMSA denied it *Brady* materials in its own enforcement proceeding.  *Id.* at 26–35. Polyweave finally argues that it suffered a "pocketbook injury" because it had to pay its lawyers to compel PHMSA to disclose those *Brady* materials.  *Id.* at 35–37.

Each of these four standing theories falls short.  The first two fail to allege a valid Article III injury.  The next two fail to satisfy Article III's causation and redressability elements.

*Theories One and Two*.  Polyweave's first two standing theories flunk Article III's injury element.  An Article III injury must be, among other things, particularized and concrete.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The "particularized" element requires a harm to affect a plaintiff in an individual way, not in the same way that it affects the public generally.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1).  This element thus bars parties from litigating "generalized grievances."  *See Carney v. Adams*, 141 S. Ct. 493, 498–99 (2020); *Gill v. Whitford*, 138 S. Ct. 1916, 1929–30 (2018); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam); *Ex parte Lévitt*, 302 U.S. 633, 633–34 (1937) (per curiam).  As perhaps the most common "generalized grievance," plaintiffs routinely challenge government action as illegal on the ground that it injured their interest in "the rule of law"—an interest that they share with everyone else.  *In re Cap. Contracting Co.*, 924 F.3d 890, 898 (6th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998)). That type of injury does not suffice.  *See Lance*, 549 U.S. at 441–42.  Plaintiffs instead must show that the action affected them specifically—because, for example, the government enforced a challenged law against them.  *Cf. Trump v. Hawaii*, 138 S. Ct. 2393, 2416 (2018); *Davis v. FEC*, 554 U.S. 724, 733 (2008).

The "concrete" element, by comparison, requires that the plaintiff's injury be "real" rather than "abstract."  *Spokeo*, 578 U.S. at 340 (citation omitted).  In recent years, the Supreme Court has given this element new teeth.  The Court has reaffirmed that Congress lacks unlimited power to create a new "statutory right" and give the new right-holder a cause of action to sue over the right's violation.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205–07 (2021);

*Spokeo*, 578 U.S. at 341. Rather, a violation of the new right will create a concrete injury only if the violation resembles an injury that could create a "case" as a historical matter. *See TransUnion*, 141 S. Ct at 2204. Traditional injuries include, for example, tangible harms to persons or property. *See id.* They also include some intangible harms, such as constitutional harms to free speech. *See id.*

Here, Polyweave's first two theories do not allege an Article III injury for the same reason: the company does not identify a *particularized* injury. According to the first theory, Polyweave suffered a constitutional injury because the rescission of Subpart D violated due process. According to the second theory, Subpart D at least created new regulatory rights and the rescission of these rights (allegedly in violation of the APA) injured Polyweave. Yet Polyweave makes both arguments in the "abstract"—as if the Secretary's mere issuance of the rule *automatically* injured the company. *Carney*, 141 S. Ct. at 499. Not so. These two theories allege "nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law[.]" *Id.* at 498. That is, they allege a classic generalized grievance. *See id.* at 498–99. Yet when an agency issues a regulation that violates, say, the Free Speech Clause, the entire population does not immediately suffer a speech injury that allows everyone to challenge the regulation's validity. Instead, a plaintiff like Polyweave must show that the challenged action (like the elimination of Subpart D) affected the plaintiff in a personal way. *Cf. Davis v. Colerain Township*, 2022 WL 4351074, at *4 (6th Cir. Sept. 20, 2022). For its first two theories, Polyweave did not even attempt to make this showing.

With these theories, Polyweave instead focused only on the *concrete*-injury element. It essentially claims that the government's failure to disclose exculpatory evidence in agency proceedings is a concrete injury because it qualifies as a "harm[] specified by the Constitution" under *Brady*. *TransUnion*, 141 S. Ct. at 2204. Even if this harm did not rise to the constitutional level, Polyweave adds, it is still concrete because a right to exculpatory evidence in agency proceedings resembles *Brady*'s right and so "has a 'close relationship' to a harm 'traditionally' recognized as" sufficient. *Id.* (quoting *Spokeo*, 578 U.S. at 341). Yet I need not decide whether these arguments suffice to allege a concrete injury. Plaintiffs must establish both concrete and particularized injuries. *See TransUnion*, 141 S. Ct. at 2206 n.2 (citing *Spokeo*, 578 U.S. at 339–

40).  And the Secretary's rescission of Subpart D—by itself—did not injure Polyweave in a personal way.

I add one final disclaimer about these two theories.  On appeal, the parties spend pages debating the merits of Polyweave's claims.  For the first theory, for example, they dispute whether we should transplant *Brady*'s due-process rule from criminal prosecutions to agency proceedings.  The government argues that Polyweave lacks standing because courts have not extended *Brady* in this way.  Yet this debate is beside the point now because it "conflate[s] the merits of [Polyweave's *Brady*] claim with [Polyweave's] standing to bring it."  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021).  As long as Polyweave's claim is not frivolous, its standing to raise the claim does not depend on our agreement that *Brady* should extend to agency proceedings.  *See id.*  Polyweave's standing instead turns on whether it has identified a concrete and particularized injury.  Its first two theories fail because Polyweave does not allege a particularized injury.

*Theories Three and Four.*  Polyweave's other theories attempt to rectify this particularity problem by pointing to its own enforcement proceeding.  But these theories suffer from distinct causation and redressability problems.  *See Davis*, 2022 WL 4351074, at *3.  As for causation, a plaintiff must plausibly plead that its injury is "fairly traceable" to the defendant's conduct that it challenges.  *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).  So when a plaintiff challenges one law, it cannot rely on an injury caused by another one.  *See Davis*, 2022 WL 7199288, at *3.  As for redressability, a plaintiff must show that the relief that it requests would remedy the injury that it alleged.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).  Damages can remedy a past injury, but they do nothing to redress a future one.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798–802 (2021); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983).  Conversely, injunctive and declaratory relief can remedy a future injury, but they do nothing to redress a past one.  *See Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (per curiam); *Frost v. Sioux City*, 920 F.3d 1158, 1161–62 (8th Cir. 2019).

Polyweave's third theory of injury flunks the causation element.  Polyweave's complaint (if read charitably) alleged that PHMSA had been failing to disclose exculpatory evidence in its own enforcement proceeding.  This allegation may well plead an Article III injury, but I need not

decide the issue. The complaint failed to plausibly plead that this injurious nondisclosure had been "fairly traceable" to the Secretary's rescission of Subpart D (rather than to, say, a rogue employee or simple incompetence). *California*, 141 S. Ct. at 2113 (citation omitted). To begin with, the Secretary's rationale for the rescission did not suggest that he was doing away with the agency's policy of disclosing exculpatory evidence. Rather, he suggested that he rescinded the regulations for a cosmetic reason: the Department need not codify internal processes in the Code of Federal Regulations. *See* 86 Fed. Reg. at 17,293. In addition, the *Brady* regulation that Polyweave now seeks to resuscitate existed while it litigated its own enforcement proceeding in the first instance prior to appealing. So, according to Polyweave, PHMSA was failing to disclose evidence even *before* the Secretary rescinded the *Brady* regulation and during the entire time that this regulation required that disclosure. How could the Secretary's later-in-time rescission have caused the earlier lack of disclosure? The Latin phrase "post hoc ergo propter hoc" describes the logical fallacy that a later event was caused by an earlier one simply because it came later. To state a claim here, however, Polyweave must rely on an even more incredible logical leap: "ante hoc ergo propter hoc." Simply put, it is implausible to suggest that the Secretary's rescission caused any nondisclosure in Polyweave's proceeding.

Polyweave's fourth theory of injury flunks the redressability element. Polyweave's complaint alleged that it suffered "pocketbook" harms as a result of the rescission of Subpart D. Polyweave allegedly had to pay its counsel to request that PHMSA disclose the exculpatory evidence that the prior *Brady* regulation would have compelled the agency to disclose on its own. Yet Polyweave sought only injunctive and declaratory relief against the rescission of Subpart D; it did not seek damages. So this claimed monetary injury in the *past* does nothing to establish its standing to seek the remedy that it wants now: an injunction and declaratory relief to redress a *future* harm. *See Lyons*, 461 U.S. at 105–10; *Shelby Advocs.*, 947 F.3d at 981.

For these reasons, I concur in the judgment.